BLANCHE HOUGLAND *et al.* Defendants in Error, *vs.* THE AVERY COAL AND MINING COMPANY, Plaintiff in Error.—EMMA STEVENSON, Defendant in Error. *vs.* Same.

*Opinion filed October 28, 1910—Rehearing denied Dec. 7, 1910.*

1. MINES—*shot-firers are within protection of general Mines and Miners act.* A shot-firer is an employee of the mine and is within the protection of the provisions of the general Mines and Miners act, even though the Shot-firers act is not an amendment of the general act. (*Hollingsworth* v. *Chicago and Carterville Coal Co.* 243 Ill. 98, distinguished.)

2. SAME—*when contributory negligence of shot-firer is no defense.* If an explosion resulting in the death of a shot-firer occurred from the willful failure of the mine owner to provide proper air currents and keep the roadways cleaned and sprinkled, contributory negligence on the part of the deceased in firing a shot prepared in an unskillful manner does not defeat a recovery.

3. APPEALS AND ERRORS—*when alleged error in permitting party to explain letter written to witness will not reverse.* Alleged error in permitting the attorney for the plaintiff to explain what he meant by a letter to a witness offering to stand good for his expenses, etc., if he would appear at the trial and testify without a subpoena is not ground for reversal, where the letter was given in evidence and the witness did not testify for the plaintiff but was called by defendant and gave testimony favorable to the defense,

4. LIMITATIONS—*adding new plaintiff is not commencement of a new suit.* Where it appears, on the trial of an action for willful violation of the Mines and Miners act, that one of the children of the deceased miner has not been joined with the others as plaintiff it is not error to allow an amendment joining such child as a plaintiff, even though more than one year has passed since the injury, as the addition of the necessary party plaintiff is not the commencement of a new suit nor the statement of a new case.

5. SAME—*defense of Statute of Limitations can only be raised by plea.* The defense of the Statute of Limitations can only be availed of by plea in an action at law and is not raised by a motion to dismiss for want of proper parties plaintiff.

WRIT OF ERROR to the Appellate Court for the Fourth District;—heard in that court on appeal from the Circuit Court of Perry county; the Hon. B. R. BURROUGHS, Judge, presiding.

Plaintiff in error was on and prior to February 11, 1907, possessed of and operating a coal mine in Perry county, Illinois, containing numerous entries, rooms, cross-cuts and roadways, out of which it mined and hauled coal. William Stevenson and William Hougland were on said date in the employ of plaintiff in error as shot-firers, and on the afternoon of said February 11 descended into the mine for the purpose of performing the duties of their employment. While so in the mine, at work in the entries and rooms thereof, a violent explosion occurred, causing a loud report, which was heard by persons out of the mine and in the vicinity of its top, and volumes of smoke were seen ascending from the mouth of the shaft. When an entrance into the mine was afterwards effected it was discovered that the explosion had been of such violence as to knock down tools and trap-doors, disarrange air currents, blow open powder boxes, destroy powder cans, and black damp and dangerous gases had begun to accumulate. The dead bodies of Stevenson and Hougland were found, the former in room 3 of the first west entry off of the main south en-

try, about forty feet from the door, and the latter in the first west entry, about ten feet east of a cross-cut between the entries. The widow of Stevenson brought suit to recover damages for the death of her husband, and the children of Hougland also brought an action for damages resulting from the death of their father. The declarations in the two cases are alike, except as to the description of the places where the two men were at the time of their deaths. The negligence charged in each declaration is the same. Originally there were seven counts in each declaration. Before the trial of the Stevenson case, which was the first of the cases to be tried, plaintiff dismissed the fifth, sixth and seventh counts of the declaration. That trial resulted in a verdict and judgment in favor of plaintiff, which, on appeal to the Appellate Court for the Fourth District, was reversed for errors committed by the trial court during the progress of the trial and the cause was remanded to the circuit court for a new trial. (*Stevenson* v. *Avery Coal and Mining Co.* 143 Ill. App. 397.) On the case being re-instated in that court the first count of the declaration was also dismissed, and the first, fifth, sixth and seventh counts of the declaration in the Hougland case were dismissed. The two cases were then consolidated and heard at the same time, as the evidence for both parties was the same in both cases. By agreement between the parties the testimony, so far as either party desired, heard at the first trial of the Stevenson case was read from the bill of exceptions taken in that case and no new witnesses were produced on either side. That trial resulted in a verdict in favor of plaintiffs in each case for $3000, upon which the court, after overruling motions for a new trial, rendered judgments. The defendant prayed and was allowed an appeal in each case to the Appellate Court for the Fourth District. That court affirmed the judgments in both cases, and the records are brought before this court for further review by writ of *certiorari*.

As the questions involved in the two cases are precisely the same they have been submitted as one case in this court and separate opinions will not be written in each of the cases, as the decision of one case must control the other.

The second count of the declaration in the Stevenson case, after describing, to some extent, the underground workings of the mine and setting out the duty of plaintiff in error to provide and maintain cross-cuts not more than sixty feet apart and to not open rooms in advance of the air current, alleged that plaintiff in error willfully failed to comply with the requirement of the statute that cross-cuts not more than sixty feet apart should be made; that it willfully opened the rooms in advance of the air current, and that by reason thereof standing powder smoke, gases, mine dust and deleterious air accumulated and remained in said rooms and were liable to explode, of which plaintiff in error knew or by the exercise of due care could have known, whereby, while William Stevenson, then in the employ of plaintiff in error as a shot-firer and who had lighted a shot in the face of a certain entry near certain rooms, was waiting in one of said rooms the said shot fired, and thereby caused an explosion of the standing powder smoke, gases, mine dust and other deleterious air being in said rooms and resulted in the death of said William Stevenson. The third count alleged that the entry and rooms mentioned and the roadways in the mine were, on and prior to February 11, 1907, so dry and the air so charged with dust that explosions were liable to result therefrom; that the plaintiff in error knew, or by the exercise of due care could have known, of this condition, but willfully violated the provisions of the statute which required that when the air becomes charged with dust the operator must have the roadways regularly and thoroughly sprayed, sprinkled or cleaned, by reason whereof the explosion occurred. The fourth count was substantially the same as the third, except that it charged the plaintiff in error with the willful fail-

ure to comply with the provisions of the statute requiring the hauling roads of the mine to be frequently and thoroughly sprinkled, by reason of which the explosion occurred.

B. W. POPE, and PERCY WERNER, for plaintiff in error.

WEBB & WEBB, and A. R. DRY, for defendants in error.

Mr. JUSTICE FARMER delivered the opinion of the court:

The theory of the defendants in error on the trial of the cases was, that the explosion was caused by the shots fired igniting the dust and gases which had accumulated in the mine by reason of the failure of plaintiff in error to make the cross-cuts and keep the roadways sprinkled and cleaned as required by law. The evidence tended strongly to prove that the conditions existed in the mine as alleged in the declaration and the willful violation by plaintiff in error of the provisions of the statute as alleged. Plaintiff in error contends, and offered proof to support the contention, that a shot exploded in the face of the second west entry off the main south was not properly prepared and was not a practical shot. It was prepared by a miner named Heppe and was examined and approved by Hougland. On examination after the explosion it was found this shot had not as thoroughly broken up the coal as it should have done. Plaintiff in error contends that the hole in which the powder was placed was drilled a foot deeper than the cutting in the face of the coal, and that this caused a "windy or blown-out shot," sending out sparks of fire and flame that ignited a quantity of powder in the mine in the vicinity of the shot, from which gases formed that suffocated the men. Defendants in error offered proof to the effect that the hole for the shot in the face of the second west entry was drilled only a few inches deeper than the cutting in the face and that it was a practical shot. The proof offered by each of the parties tended to support their

respective theories of the cause of the explosion and of the death of the two men. Plaintiff in error argues that the theory of defendants in error is contradicted by physical facts and known scientific laws, and in support of this argument says the proof shows the hair and clothing of the two men were not burned and no effects of fire appeared on the body of a dead mouse found near them. This, it is contended, could not have been the case if their deaths had resulted from an explosion of dust and gases. In addition to the presence of dust and gases accumulating and standing in the mine by reason of the failure of plaintiff in error to provide proper cross-cuts and air currents and to sprinkle and clean the roadways and the liability of such conditions to cause an explosion of the character that occurred in the mine, there was also proof that the faces of the men appeared to be parched and baked, and a witness who shaved both of them after they were taken out of the mine testified that their faces appeared to be baked and the skin on the face of Stevenson had a tendency to come off as the witness shaved him. Under this condition of the record we could not disturb the judgments on the ground that the proof does not sustain the declarations.

The principal ground upon which plaintiff in error asks a reversal of these judgments is, that a shot-firer does not come within the protection of the general act concerning mines and miners. The Shot-Firers act was originally passed in 1905 and was amended by the addition of three sections in 1907. The amendments, however, do not affect the decision of the question raised by the plaintiff in error. The reason given by plaintiff in error for its contention that shot-firers are not within the protection of the general act concerning mines and miners is, that the Shot-Firers act is a separate and independent legislative enactment in nowise amendatory of the general act; also, that shot-firers are experts to whom the entire mine is turned over when they commence the discharge of their duties, and no in-

spection is required or can be made after the miners quit work and before the shot-firers enter upon the discharge of their duties. In *Davis* v. *Illinois Collieries Co.* 232 Ill. 284, a shot-firer was held to be within the protection of the general act concerning mines and miners. This case was cited with approval in *Brennen* v. *Chicago and Carterville Coal Co.* 241 Ill. 610, where it was said the provisions of the general act "are for the safety and protection of all who are employed in the mine, including engineers, fire-men, pump men, shot-firers, drivers and other workmen and employees."

Plaintiff in error insists that since those cases were decided this court has held in *Hollingsworth* v. *Chicago and Carterville Coal Co.* 243 Ill. 98, that the Shot-Firers act is an independent act and not an amendment to the general Mining act, and that the decisions in those cases are therefore no authority. We cannot agree to this position. In the *Hollingsworth case* the coal company did not employ shot-firers, and the shot fired by one of the miners caused an explosion, resulting in the death of another miner. The widow of the deceased brought an action against the coal company, and alleged as a ground of recovery that the mine was of such condition and character that the law required shot-firers to be employed therein, and that the coal company willfully failed to employ shot-firers, by reason whereof her husband was killed. We held the Shot-Firers act being no part of the general Mines and Miners act but being an independent act, and containing no provision authorizing a widow to sue for damages for failure to comply with its provisions, as is the case with the general act, the suit could not be maintained. There is no intimation in the opinion in that case that shot-firers are not within the protection of the general act, and that decision is in nowise inconsistent with the previous decisions of this court holding that they are within the protection of said act.

Complaint is made of the ruling of the trial court in permitting witnesses experienced in the business of mining and shot-firing to testify, over the objection of plaintiff in error, that the shot in the second west entry was a workmanlike and practical shot. One of these witnesses prepared the shot, another saw it before it was fired and the others made their examinations afterwards. Some of them testified it split the coal so that it was easily mined afterwards but did not knock it down, as is usually the case. Some of them called it a "standing shot." All testified that it was prepared in a workmanlike and practical manner. It is conceded by the plaintiff in error that the subject was one for expert testimony and no complaint is made that the witnesses did not possess the proper qualifications. The contention is that they should not have expressed any opinions, but that they should have described the shot and left it to the jury to determine whether it was a workmanlike and practical shot. Without stopping to inquire whether the latitude allowed by the court is too broad, it is sufficient to say that whether it was or not could have no controlling force on our decision. If the explosion occurred from the willful failure of plaintiff in error to provide proper air currents and keep the roadways cleaned and sprinkled, as charged in the declaration, contributory negligence of the deceased in firing a shot prepared in an unskillful manner would not defeat a recovery. *Davies* v. *Illinois Collieries Co. supra.*

A miner named True was working in plaintiff in error's mine at the time of the death of Stevenson and Hougland. Before the first trial in the Stevenson case True left Perry county and went to Randolph county. About a week before the Stevenson trial one of the counsel for defendants in error wrote True informing him of the date the case was set for trial and asking him to be present as a witness. In the letter he stated it would cost the parties quite a sum to have him subpoenaed, and the writer stated, as attorney for

plaintiff, he would personally stand good for the witness' expenses if he would attend the trial, and in case the plaintiff won he would see that the witness was well paid for his time and trouble. This letter was introduced in evidence by plaintiff in error on the trial of these cases, and the attorney who wrote it was permitted to take the stand as a witness and testify that what he meant by what he said in the letter was that he would stand good for the necessary costs of the witness' attendance, and if the plaintiff won the case would see that he lost no time from work or wages for the time occupied in attending the trial as a witness. It is insisted that permitting the writer of the letter to explain what he meant by what was said in it is reversible error. Conceding that the ruling was erroneous, it worked no prejudice in this case to plaintiff in error and offers no ground for reversing the judgments. The witness True was not called by defendants in error but was called as a witness by plaintiff in error and testified in its behalf. The letter written to the witness by the attorney was admitted in evidence and read to the jury. Whatever the motives of counsel may have been in writing the letter, it is very certain that it accomplished no injury to plaintiff in error, for it called True as its witness and his testimony was favorable to plaintiff in error. Under such circumstances the error in allowing the witness to explain his motives and meaning in writing the letter affords no justification for a reversal of the judgments.

William Hougland, deceased, had been married but he and his wife were divorced several years before his death and the divorced wife had re-married. The suit for damages for his death was brought by his two minor children, Blanche and Thomas Hougland, by their next friend. The divorced wife of the deceased was a witness on the trial, and it developed from her testimony that there was another son, Edward Hougland, twenty-eight years old. At the conclusion of the testimony of the plaintiffs below in the

Hougland case the defendant moved the court to dismiss that case on the ground that the evidence showed the necessary parties plaintiff had not been joined in the action, were not before the court, and no recovery by the then plaintiffs could be had because the right of action is in all the lineal heirs of William Hougland, deceased, and not in a part of them, only. At the conclusion of all the evidence defendant in the Hougland case moved the court to instruct the jury that under the pleadings and the evidence in that case the verdict should be for the defendant. The court denied the motion made at the conclusion of the plaintiffs' evidence and also refused the instruction requested at the conclusion of all the testimony. Upon the jury returning a verdict in favor of plaintiffs in the Hougland case a motion for a new trial was made, and one of the grounds of the motion was that the court erred in refusing to dismiss the case for want of proper parties plaintiff. Leave was asked by and granted plaintiffs to join Edward Hougland as a party plaintiff, and leave was granted to make the necessary amendments for that purpose. The amendments were accordingly made and the motion for new trial was overruled and judgments rendered on the verdict. It is now contended that on the death of William Hougland an action accrued to all his children, and that all must join in the action to recover within the period of the Statute of Limitations,—one year. In this case the amendment was made more than two years after the death of William Hougland, and it is insisted it should be held that the amendment making Edward Hougland a party plaintiff was the same as the commencement of a new suit in a cause of action that was barred by the Statute of Limitations. The cause of action was the death of William Hougland under the circumstances alleged in the declaration and shown by the proofs, and the right to bring suit on the cause of action was given by the statute to his children. The suit was begun within one year from the time the

cause of action accrued, and the addition of a necessary party plaintiff afterwards was not the commencement of a new suit or the statement of a new cause of action. The first section of the act in relation to amendments and jeofails provides that the court in which an action is pending "shall have power to permit amendments in any process, pleading or proceeding in such action, either in form or substance, for the furtherance of justice, on such terms as shall be just, at any time before judgment rendered therein." The 39th section of the Practice act authorizes amendments at any time before final judgment, "introducing any party necessary to be joined as plaintiff or defendant, discontinuing as to any joint plaintiff or joint defendant, changing the form of the action, and in any matter either of form or substance, in any process, pleading or proceeding which may enable the plaintiff to sustain the action for the claim for which it was intended to be brought or the defendant to make a legal defense." These sections of the statutes contain ample authority to sustain the ruling of the court in permitting the amendment. (*Teutonia Life Ins. Co.* v. *Mueller,* 77 Ill. 22; *Cogshall* v. *Beesley,* 76 id. 445; *McCall* v. *Lee,* 120 id. 261; *Kanawha Dispatch* v. *Fish,* 219 id. 236.) Furthermore, the question of the Statute of Limitations was never raised in any proper manner in the case. No plea of the statute was filed or offered to be filed. The motion to dismiss for want of proper parties plaintiff did not interpose the defense of the Statute of Limitations. That defense in actions at law can only be availed of by plea. *Burnap* v. *Wight,* 14 Ill. 303; *Gebhart* v. *Adams,* 23 id. 397; *Gunton* v. *Hughes,* 181 id. 132.

Finding no reversible error in either of the records the judgments of the Appellate Court in both cases are affirmed.

*Judgments affirmed.*