DEPARTMENT OF TREASURY *v.* CITY OF EVANSVILLE.

[No. 28,080. Filed May 14, 1945. Rehearing denied June 13, 1945.]

*James A. Emmert,* Attorney General, and *John J. McShane* and *Winslow Van Horne,* Deputy Attorneys General for appellant.

*Ross, McCord, Ice & Miller,* of Indianapolis, for appellee.

YOUNG, J.—This case involves the liability of the city for the payment of gross income tax upon income derived from certain activities and the decision depends upon whether or not the activities are private or proprietary within the meaning of the 1937 amendment to the Gross Income Tax Act. Originally the Gross Income Tax Act levied a tax upon the entire gross income of every "person" engaged in any business or activity, with certain exceptions not here involved, and defined the term "person" to include municipal corporations. The 1937 amendment changed the definition of "person" to read as follows:

> "When used in this act, the term 'person' . . . , means and includes any . . . municipal corporation or any other political subdivision of the state engaged in private or proprietary activities or business, . . . ." § 64-2601, Burns' 1933.

The City of Evansville is engaged in the following activities from which it derives gross revenue:

It owns and operates two city markets in which it leases stalls and stands to farmers and others engaged in the operation of retail food establishments.

It is located on the Ohio River and owns real estate along the river's edge, which it has improved and operates as a public wharf. Boats using the wharf facilities pay for such use.

It owns certain levee, street and park property which it leases to persons for farming and other uses. This includes street paving and repair equipment which it leases to contractors when not in use by the city.

It also owns and operates a municipal golf course as a part of its park system, in connection with which it collects fees for the privilege of playing and locker rentals.

It also, in connection with its park system, leases concession stands and shelter houses from which sales are made of soft drinks and confections.

During the period here involved, it also sold and leased park and airport land.

During the period here involved, it made sales of miscellaneous, obsolete or wornout equipment accumulated by the street department; also property acquired in a normal way by the park department, but no longer useful; also scrap and junk accumulated at the municipal airport.

It granted permits to persons desiring to cut into the city streets for utility connections and other purposes, and at the time of granting such permits charged the permittee a sum sufficient to pay the cost of replacing the cut pavement, which said sums were placed in the Street Department fund of the city.

The city operates a municipal airport at which gas and oil are sold and rental is received for the storage of planes. Income is also derived from soft drink concessions at the airport.

It owns and operates two cemeteries from which it derives revenue from the sale of lots and graves, containers for flowers and the installation of miscellaneous materials, foundations for stones and monuments, and service and sodding lots and graves. A house is located upon the cemetery grounds which is rented.

It owns and operates a rendering plant used for the reduction of dead animals and the salvaging of by-products available from such operation. By-products are sold in the open market.

Some of the property used in these activities was given to the city and some was purchased with money raised by taxation or the sale of bonds. Some of these activities have resulted in net loss which has been paid from funds derived from taxes. We have not referred to these matters in stating the several items involved, because the tax involved is not a profits tax and the taxability of every item of income depends solely upon the nature and character of the activity involved and not upon whether a profit is realized, or from what source a deficit is met, or how the property used was acquired.

For the years 1937 to 1941, the City of Evansville paid gross income tax upon its gross receipts derived from all the foregoing activities. Thereafter it filed its statement and petition for refund, which was denied and this action was brought to recover the gross income tax so paid. The case was submitted upon a stipulation of facts and the court found that the city's receipts from its markets; wharf; golf course privileges; street repairs; sale of gas and oil at the airport; and sale of lots and graves and service and sodding in its cemeteries, were not taxable under the terms of the Gross Income Tax Law, as amended in 1937, and found that receipts from locker fees, park and airport concessions; sale of park and airport land; miscellaneous sale of park, street and aviation scrap and junk and obsolete equipment; and sale of by-products of the rendering plant, are taxable under the Gross Income Tax Law, as amended in 1937, and rendered judgment accordingly.

The State filed its motion for a new trial, which was overruled, and brings the case to this court upon appeal

The City filed no motion for a new trial and has assigned no cross-errors. There is no challenge of the lower court's actions upon the items held taxable. Therefore only the items held not taxable are before us, and the sole question is whether or not the income of the city derived from the items held not taxable constitute income from private or proprietary activities or business within the meaning of the 1937 amendment to the Gross Income Tax Law.

The rule is universally recognized that municipal corporations exist and act in a dual capacity—one public or governmental and the other private or proprietary. In its public or governmental capacity, it acts as the agent of the state for the benefit and welfare of the state as a whole, but when acting for the peculiar and special advantage of its inhabitants, rather than for the good of the state at large, the city is spoken of as acting in a private or proprietary capacity. *State* v. *Fox* (1902), 158 Ind. 126, 135, 136, 137, 63 N. E. 19; *Aiken* v. *City of Columbus* (1906), 167 Ind. 139, 144, 146, 147, 78 N. E. 657; *City of Kokomo* v. *Loy* (1916), 185 Ind. 18, 20, 21, 112 N. E. 994; *Logansport* v. *Public Service Comm.* (1931), 202 Ind. 523, 532, 177 N. E. 249; *Huntington* v. *Northern Ind. Power Co.* (1937), 211 Ind. 502, 5 N. E. (2d) 889; *Dillon Municipal Corporation,* 5th Ed. Vol. 3, § 1303, p. 2134; *Chadwick, Treasurer* v. *City of Crawfordsville* (1940), 216 Ind. 399, 412, 413, 24 N. E. (2d) 937; *Dillon on Municipal Corporations,* Vol. I, § 109, p. 182; 1 *McQuillen Municipal Corporations,* 2d Ed. § 126, p. 381; 37 Am. Jur. § 114, p. 727; 43 C. J. §§ 178, 180, pp. 179, 184.

In the case of *City of Kokomo* v. *Loy, supra,* the appellee was injured working as an employee in a city park. His injuries were caused by the discharge of a cannon which he was attempting to unload under the direction

of the park superintendent. The suit was prosecuted upon the theory that the city was acting in its private and proprietary capacity in maintaining and conducting the park. The city contended that it was acting in a governmental capacity and was not liable. There was a verdict for the plaintiff which was affirmed, and Judge Lairy recognized the dual capacity in which cities may act, and pointed out the distinctions between the two capacities, and stated the accepted rule in the following language at pp. 21 and 22:

> "Municipal corporations exist in a dual capacity and their functions are twofold. In one they exercise the right springing from sovereignty and, while in the performance of the duties pertaining thereto, their acts are political and governmental. Their officers and agents in such capacity, though elected or appointed by them, are nevertheless public functionaries performing a public service, and as such they are officers, agents and servants of the state. In the other capacity the municipalities exercise a private, proprietary or corporate right, arising from their existence as legal persons and not as public agents. Their officers and agents in the performance of such functions act in behalf of the municipalities in their corporate or individual capacity and not for the state or sovereign power."

The reason for the rule is a little more clearly stated in the following sentence from the discussion of the subject in 37 American Jurisprudence at page 727:

> "But in its proprietary or private character, the theory is that the powers are supposed not to be conferred primarily or chiefly from considerations connected with the government of the state at large, but for the private advantage of the compact community which is incorporated as a distinct legal personality or corporate individual; . . . ."

This language in American Jurisprudence is taken almost verbatim from Judge Dillon's treatise.

The rule is stated in McQuillin on Municipal Corporations, 2d Ed., Vol. 1, § 126, p. 381, as follows:

"A municipal corporation proper has a twofold capacity or character—one governmental, the other private. It has a public character as regards the state at large in so far as it is its agent in government, and private (so-called) in so far as it is to promote local necessities and conveniences for its own community."

In the case of *Chadwick* v. *City of Columbus* (1940), 216 Ind. 399, 24 N. E. (2d) 937, involving taxation of utility property owned and operated by a municipality, this court used the following language at page 412:

"When a municipality has been clothed with powers for the peculiar and special advantages of its inhabitants, rather than for the good of the state at large, the corporation has a private character, and its liability for torts *and otherwise* (our italics) is based upon the same principles as that of a private corporation, . . . ."

Another test which may be applied is found in the case of *City of Logansport* v. *Public Service Commission* (1931), 202 Ind. 523, 532, 177 N. E. 249. The following language on page 532 is helpful:

"When a municipal corporation engages in an activity of a business nature, . . . which is generally engaged in by individuals or private corporations it acts as such corporation and not in its sovereign capacity, . . . ."

In the case of *Borgman, Treasurer* v. *City of Fort Wayne* (1939), 215 Ind. 201, the following language is used at page 206:

"Property owned by the city used in a proprietary business enterprise—that is, sale to consumers for a consideration—is regarded by the law the same as property owned by any individual or business corporation (citing authorities)."

By the authorities first cited above the test seems to be whether the activity is primarily for the advantage of the state as a whole or for the special local benefit of the compact community involved. In the Logansport and Borgman cases last above cited, a test seems to be whether the activity is of a business nature which is generally engaged in by private persons or corporations. The reported cases have applied other tests. It is proper to consider whether the activity is in performance of a duty imposed upon the municipality by the sovereign power, or is in the exercise of a permissive privilege given by the sovereign power. In the first instance the activity would be public and governmental and in the second instance the activity would be private and proprietary. *Aiken* v. *City of Columbus* (1906), 167 Ind. 139, 146, 78 N. E. 657; *City of Kokomo* v. *Loy* (1916), 185 Ind. 18, 112 N. E. 657; *City of Indianapolis* v. *Butzke* (1940), 217 Ind. 203, 208, 27 N. E. (2d) 82. The fact that a charge was made by the city to those who acquired merchandise or service from the activity in question, has been held to be a proper consideration in determining whether the activity is governmental or proprietary. *City of Kokomo* v. *Loy, supra; City of Indianapolis* v. *Butzke, supra.* It is also held that the conduct of city police and fire departments, schools and hospitals are governmental activities. *City of Kokomo* v. *Loy* (1916), 185 Ind. 18, 23, 24, 112 N. E. 657; *City of Indianapolis* v. *Butzke* (1940), 217 Ind. 203, 208, 209, 27 N. E. (2d) 82.

While it is well established that governmental units act in a dual capacity and engage in some activities which are private or proprietary, and others which are public or governmental, and while general rules and tests have been evolved and stated in the cases and text books to distinguish the two, none of these rules is con-

clusive, and a great deal of confusion has resulted in application, and uniformity in application has not been attained. Each case is a subject for individual determination in the light of its own facts. While this is true, the general rules to which we have called attention should always be considered, and consistency, so far as possible, should be the aim, else we will have no landmarks and cases will be decided according to the arbitrary fiat of the man who happens to be judge.

We have carefully considered the activities of the City of Evansville, which the trial court held to be not taxable and we have reached the conclusion that in operating and conducting its markets, its wharf, its golf course, its airport and its cemeteries, it is engaged in private and proprietary activities and its income from these sources is subject to gross income tax under the 1937 amendment to the Gross Income Tax Law. In all of these activities it is acting primarily for its own compact community rather than for the state at large. Each of these activities is of a general business nature frequently engaged in by private persons or corporations. In each instance the city is exercising a permissive privilege given by statute and is not performing a duty imposed by the legislature. In all of these activities consideration in the form of money flows to the city from those who are the immediate and direct participants and beneficiaries of the activities.

This conclusion is not only consistent with the rules and tests herein discussed but is supported by authority. The operation of markets by a city has been held to be a proprietary activity. *Reed* v. *Mayor* (1936), 171 Md. 115, 118, and cases cited, 188 A. 15; McQuillen on Municipal Corporations, Second Edition, Vol. 6, § 2248, p. 1182. The operation of a wharf likewise has been held to constitute a private or proprietary activity

*Jeffersonville* v. *Gray* (1905), 165 Ind. 26, 29, and cases cited, 74 N. E. 611; McQuillen on Municipal Corporations, Second Edition, Vol. 6, § 2849, p. 1183. The golf course involved in this case is a part of the park system of the city, and in Indiana it has been held that in operating their park systems municipalities exercise a private, proprietary and corporate right. *City of Kokomo* v. *Loy* (1916), 185 Ind. 18, 112 N. E. 994; *Sherfey* v. *Brazil* (1937), 213 Ind. 493, 502, 13 N. E. (2d) 568; *Terre Haute* v. *Webster* (1942), 112 Ind. App. 101, 105, 41 N. E. (2d) 661. The operation of cemeteries by a city constitutes a proprietary activity. *Mt. Hope Cemetery* v. *Boston* (1892), 158 Mass. 509, 519, 33 N. E. 695; *Hollman* v. *Platteville* (1898), 101 Wis. 94, 99, 76 N. W. 1119; *Toledo* v. *Cone* (1894), 41 Ohio St. 149, 161, 162. The operation of an airport by a city has been held to constitute a proprietary activity. *Mobile* v. *Lartigue* (1930), 23 Ala. App. 479, 483, 127 So. 257; *Coleman* v. *Oakland* (1931), 110 Cal. App. 715, 720, 295 P. 59; *Peavey* v. *Miami* (1941), 146 Fla. 629, 636, and cases cited, 1 So. (2d) 614; *Christopher* v. *Elpaso* (1936), 98 S. W. (2d) 394, 398 (Tex. Civ. App.); *Pignet* v. *Santa Monica* (1938), 29 Cal. App. (2d) 286, 287, 84 P. (2d) 166; *Blue* v. *City of Union* (1938), 159 Ore. 5, 11, 75 P. (2d) 977.

This leaves for determination the taxability of the city's revenue from persons obtaining permits to cut street pavements for the convenience of such permittees.

In Indiana cities consistently have been held liable for torts committed in connection with the maintenance of their streets. Ordinarily this would mean a private or proprietary activity. But the basis for such liability as to street maintenance is at present in some confusion in Indiana. See *Touhey* v. *City of Decatur* (1911), 175 Ind. 98, 100, 93 N. E. 40, for one theory, and *Aaron* v.

*City of Tipton* (1941), 218 Ind. 227, 235, 32 N. E. (2d) 88, for another theory.

But the character of the activity from which the revenue here involved was received does not depend upon the capacity in which the city maintains its ■ streets. This revenue all came from individual citizens desiring for their own personal, private interests to cut street pavements, and the city's activity in this connection was for the purpose of gratifying this private, personal desire of certain individuals, and took its color from this purpose and was, we think, a private and proprietary activity rather than the exercise of a public or governmental function. In this view such income is taxable under the 1937 amendment.

This is a companion case to the *Department of Treasury* v. *City of Linton, ante,* p. 363, decided by this court contemporaneously with this case. In both cases the same arguments against taxability were presented. It was argued that, because the activities under consideration involved exercise of the police power and the power of eminent domain and the taxing power, and because the personal and real property involved was exempt from property tax, the activities involved were public activities and not private or proprietary.

In the Linton case, we discussed these propositions at length and for the reasons stated in the Linton case are not convinced by the same arguments in this case.

Having found that the activities discussed are taxable under the 1937 amendment of the Gross Income Tax Law, it follows that the court erred in ordering refunds.

The judgment is therefore reversed with instructions to sustain appellant's motion for a new trial and for further proceedings consistent with this opinion.

Note.—Reported in 60 N. E. (2d) 952.