Harvey **TAYLOR**, Appellant–Defendant,

v.

**STATE of Indiana,** Appellee–Plaintiff.

No. 82A01–9506–CR–175.

Court of Appeals of Indiana.

March 25, 1996.

Rehearing Denied June 3, 1996.

Timothy R. Dodd, Evansville, for Appellant.

Pamela Carter, Attorney General, Meredith J. Mann, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

ROBERTSON, Judge.

Harvey Taylor appeals his convictions of seven counts of theft, all as class D felonies, and three counts of failure of a public official to deposit public funds, all as class B misdemeanors. Taylor received a total sentence of twelve years, with six years suspended to probation. He claims the evidence is insufficient to support the determination that he is a "public officer" as the statute requires;

that the evidence is insufficient to support a conviction of theft of a check because, in light of the amendment of the information, the check was post-dated; and that the trial court improperly allowed the State to amend the seven counts of theft after the close of all the evidence. We affirm.

The evidence reveals that the Mayor of Evansville appointed Taylor as the Director of the C.K. Newsome Community Center. Taylor was, in effect, the manager of the center subject to the authority of the Director of the Division of Parks and Recreation of the City of Evansville.

The Community Center generated revenue through the lease and rental of rooms and facilities to various groups and to the general public. The tenants included the Community Action Program of Evansville, the Head Start program, the Carver Community Organization, the Word of Life Church, the World Wide Church of God, a job corps program, and various for-profit and not-for-profit organizations. The tenants leased space at the center in the amount of three dollars per square foot. The Center rented its facilities, such as the atrium, the snack bar, and the library, for occasions such as wedding receptions and other programs. The center also provided governmental organizations with space for various uses and offered recreational programs in subjects such as aerobics, jazzercise, karate, and basketball.

As with all parks department facilities, the City Council appropriated money for the Community Center from the general fund. The money in the general fund came from tax revenues. The Center was approximately fifteen percent self-sufficient when Taylor was the director.

The Executive Director of the Department of Parks and Recreation had his office located in the Community Center. He characterized the Center as follows:

> The C.K. Newsome Center is a community facility that's utilized for recreation programs, education, social, cultural, and ... and welfare type programs for the community. It's a facility that's available for the entire community, although it's marketed mostly towards the neighborhood surrounding the facility.

Taylor's convictions of failure of a public officer to deposit public funds deal with Taylor's failure to fully deposit, or deposit at all, checks made payable to the Community Center in the authorized account of the City of Evansville. The theft convictions deal with check deposits Taylor made to accounts other than the authorized account of the City of Evansville.

■ Taylor first claims he is not a "public officer" within the definition of the term used in Ind.Code 5–13–14–3:

> A public officer who knowingly fails to deposit public funds, or knowingly deposits or draws any check or negotiable order of withdrawal against the funds except in the manner prescribed in this article, commits a Class B felony ...

According to I.C. 5–13–4–1, the definitions provided in I.C. 5–13–4 apply throughout I.C. 5–13. Under I.C. 5–13–4–21:

> "Public Officer" means any person elected or appointed to any office of the state or any political subdivision. "Public officer" includes an officer of all boards, commissions, departments, institutions, and other bodies established by law to function as a part of the government of the state or political subdivision that are supported wholly or partly by appropriations of money made from the treasury of the state or political subdivision or that are supported wholly or partly by taxes or fees. "Public officer" does not include an officer of an independent body politic and corporate set up as an instrumentality of the state but not constituting a political subdivision.

To determine whether Taylor was a "public officer" within the meaning of the statutes, we first must determine whether the City of Evansville, its Division of Parks and Recreation, or its C.K. Newsome Community Center is a political subdivision under the statutes.

According to I.C. 5–13–4–19, "Political subdivision" has the meaning set forth in I.C. 36–1–2–13, which, in turn, states that the term "means municipal corporation or special taxing district." Under I.C. 36–1–2–1, the definitions listed in I.C. 36–1–2 apply

throughout Title 36 of the code and therefore must apply to the definition of a municipal corporation as that term appears in I.C. 36–1–2–13. Thus, we look to I.C. 36–1–2–10, which states:

"Municipal corporation" means unit, school corporation, library district, local housing authority, fire protection district, public transportation corporation, local building authority, local hospital authority or corporation, local airport authority, special service district, or other separate local governmental entity that may sue and be sued. The term does not include a special taxing district.

In the present case, the primary entity involved is the City of Evansville. The State contends that the City is a municipal corporation but cites no authority in support of the proposition. We note that the chapter of the code which defines "municipal corporation" for our purposes here also contains definitions which include the term "city." Under I.C. 36–1–2–3, "City" refers to a consolidated city or other incorporated city of any class, unless the reference is to a school city. Under I.C. 36–1–2–11, "Municipality" means city or town. Neither of these latter definitions provide, however, that a "city" is not also a "municipal corporation" even though it may be a "municipality" and be "consolidated" or "incorporated."

Penal statutes should be interpreted in order to give efficient operation to the expressed intent of the legislature. *Barger v. State,* 587 N.E.2d 1304, 1306 (Ind.1992) (quoting *State v. Bigbee,* 260 Ind. 90, 292 N.E.2d 609 (1973)). Penal statutes are strictly construed against the state but are not to be overly narrowed so as to exclude cases the statutes fairly cover. *Id.* (citing *Cape v. State,* 272 Ind. 609, 400 N.E.2d 161 (1980)). Criminal statutes should not be wantonly narrowed, limited, or emasculated and rendered ineffective, absurd, or nugatory. If possible, they should be allowed to perform their intended mission as shown by the existing evils intended to be remedied. *Id.* (quoting *Morris v. State,* 227 Ind. 630, 88 N.E.2d 328 (1949)).

The definition of municipal corporation includes "other separate local governmental

entity that may sue and be sued." I.C. 36–1–2–10. The term "municipal corporation" certainly has a definition broader than that of "city" but nevertheless includes the term "city" within that broad definition.

Taylor, however, worked for the Community Center, which is a subordinate of the City of Evansville. Thus, we must decide whether the Center itself is a municipal corporation and, therefore, also a political subdivision for the purposes of I.C. 5–13–4–21. We note that Indiana has authorized the creation of a municipal corporation for park purposes in the form of a joint county park board. *Joint County Park Board v. Stegemoller,* 228 Ind. 103, 88 N.E.2d 686 (1949). We conclude that the Community Center qualifies, under I.C. 36–1–2–10, as a municipal corporation because it is a separate local governmental entity that may sue or be sued. Therefore, the Center also is a political subdivision. I.C. 5–13–4–19.

We next must determine whether, under I.C. 5–13–4–21, the Community Center was "established by law to function as a part of the government of the . . . political subdivision." Our decision about whether the Center functions "as a part of the government" turns on whether the Center is ultimately engaged in a governmental or proprietary activity.

The rule is universally recognized that municipal corporations exist and act in a dual capacity—one public or governmental and the other private or proprietary. *Department of Treasury v. City of Evansville,* 223 Ind. 435, 440, 60 N.E.2d 952, 954 (1945) (numerous citations omitted). In its public or governmental capacity, it acts as the agent of the State for the benefit and welfare of the State as a whole; but, when it acts for the peculiar and special advantage of its inhabitants, rather than for the good of the State at large, the city acts in a private or proprietary capacity. *Id.* Thus,

[m]unicipal corporations exist in a dual capacity, and their functions are twofold. In one they exercise the right springing from sovereignty, and while in performance of the duties pertaining thereto, their acts are political and governmental.

Their officers and agents in such capacity, though elected or appointed by them, are nevertheless public functionaries performing a public service, and as such they are officers, agents, and servants of the state. In the other capacity, the municipalities exercise a private, proprietary or corporate right, arising from their existence as legal persons and not as public agencies. Their officers and agents in the performance of such functions act in behalf of the municipalities in their corporate or individual capacity, and not for the state or sovereign power.

*Id.* at 441, 60 N.E.2d at 954–955 (quoting *Kokomo v. Loy,* 185 Ind. 18, 112 N.E. 994 (1916)).

But in its proprietary or private character, the theory is that the powers are supposed not to be conferred primarily or chiefly from considerations connected with the government of the state at large, but for the private advantage of the compact community which is incorporated as a distinct legal personality or corporate individual . . .

*Id.* (quoting 37 Am.Jur. § 114, p. 727).

When a municipal corporation engages in an activity of a business nature, . . . which is generally engaged in by individuals or private corporations, it acts as such corporation and not in its sovereign capacity, . . . .

*Id.* at 442, 60 N.E.2d at 955 (quoting *City of Logansport v. Public Service Commission,* 202 Ind. 523, 177 N.E. 249 (1931)).

■ We observe that, in Indiana, municipalities, in operating their park systems, have been held to exercise a private, proprietary, and corporate right. *City of Evansville,* at 445, 60 N.E.2d at 956 (citations omitted). We conclude, however, that the determination of whether a particular political subdivision is ultimately engaged in a governmental or proprietary function depends upon a consideration of all of the circumstances, not only the quantitative nature of the its origins, resources, and functions but their qualitative character, as well.

The record shows that the Community Center in question is an important function of the Division of Parks and Recreation of the City of Evansville. The building houses government offices and provides free space for use in public activities. The Center rents facilities for private activities and leases space to groups which aid the immediate community. The Center is supported partly by appropriations of money from the City of Evansville which are generated partly by taxes or fees.

The circumstances show that the powers conferred on the Center are not primarily for the private advantage of the community and that the activities of the Center are not primarily of a business nature. The circumstances, in their entirety, show that the Center is not an "independent body politic and corporate set up as an instrumentality of the state but not constituting a political subdivision" but, rather, ultimately functions "as a part of the government" under I.C. 5–13–4–21.

The evidence is sufficient to support the determination, under I.C. 5–13–4–21, that Taylor was a person appointed to an office of a political subdivision, an institution established by law to function as a part of the government of the political subdivision, supported in part by appropriations of money made from the treasury of the political subdivision or that are supported partly by taxes or fees. The evidence therefore is sufficient to support the determination that Taylor was a public officer, as required for his convictions under I.C. 5–13–14–3, for his failure to deposit public funds.

■ Taylor next claims one of his theft convictions, which is based upon a post-dated check, is improper because the check had no value to the City of Evansville. During the trial, the parties discovered that the check contained an erroneous date of one year later than the date actually signed. Taylor claims that the trial court should have granted his motion to dismiss the theft count after the State had amended the charge to reflect the date listed on the check.

As the State notes, Taylor deposited the post-dated check in an account which did not belong to the City of Evansville. The bank credited that account accordingly. The check clearly had value, and the trial court abused no discretion when it denied Taylor's

motion to dismiss. *See Johnston v. State,* 530 N.E.2d 1179, 1180 (Ind.1988).

Taylor next claims the trial court erroneously allowed the State to amend its information after the close of all the evidence. The trial court granted the State permission to delete, "Lawful United States Currency in the form" from each of the seven theft counts, which left the words, "of a check." According to I.C. 35–34–1–5(c):

> Upon motion of the prosecuting attorney, the court may, at any time before, during, or after the trial, permit an amendment to the indictment or information in respect to any defect, imperfection, or omission in form which does not prejudice the substantial rights of the defendant.

The original information notified Taylor that a check was involved with each theft count. The same is true of the amended information. Taylor's argument that the amendment deprived him of a defense is not persuasive. The deleted phrases amounted to mere surplusage in the information, and the amendment did not prejudice Taylor's substantial rights.

Judgment affirmed.

SHARPNACK, C.J., and NAJAM, J., concur.