STATE of Alaska, DEPARTMENT
OF REVENUE, Appellant,

v.

MUNICIPALITY OF ANCHORAGE d/b/a
Municipal Light & Power Department, a
municipality of the State of Alaska, Ap-
pellee.

No. S–11011.

Supreme Court of Alaska.

Dec. 23, 2004.

Martin T. Schultz, Assistant Attorney Gen-
eral, Anchorage, and Gregg D. Renkes, At-
torney General, Juneau, for Appellant.

Roger R. Kemppel and John Andrew Le-
man, Kemppel, Huffman and Ellis, P.C., An-
chorage, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

EASTAUGH, Justice.

## I. INTRODUCTION

Anchorage Municipal Light & Power (ML & P), a subsidiary of the Municipality of Anchorage, produces natural gas, some of which it uses to generate electricity it sells to ML & P customers. Alaska Statute 43.55.016(a) levies "upon the producer of gas a tax for all gas produced from each lease or property in the state, less any gas the ownership or right to which is exempt from taxation." But per AS 29.71.030, a municipality is not subject to a state tax unless "the law or regulation *expressly* provides that the municipality is to be assessed or taxed by the particular law or regulation." (Emphasis added.) Does AS 43.55.016(a) "expressly" provide that municipalities are to be taxed? Because its text does not state that it taxes municipalities and because the legislative history does not imply an intention to levy the gas production tax on municipalities, we conclude that AS 43.55.016(a) does not apply to the gas ML & P produces for its own use in generating electricity. We therefore affirm the superior court decision holding that ML & P is exempt from paying the gas production tax.

## II. FACTS AND PROCEEDINGS

ML & P is a department of the Municipality of Anchorage; it provides electric service to Anchorage. In 1996 ML & P purchased a one-third interest in the Beluga River Gas Field, consisting of federal and state leases held by Shell Oil Company. ML & P, which operates for profit,[1] uses the gas produced in the Beluga River Gas Field for two purposes.

It uses part of the gas to supply third parties, and it uses part of the gas to generate electricity for sale in Anchorage. ML & P used approximately eighteen to twenty-five percent of its monthly gas production for the latter purpose from November 1996 through December 1997.

For the transfer of the state leases to ML & P to be effective, the Alaska Department of Natural Resources (DNR) had to approve the transaction. ML & P proposed not paying conservation and production taxes for gas ML & P used for municipal purposes, i.e., gas it did not sell to third parties. As a condition of approval, DNR ultimately imposed production taxes for gas ML & P sold to third parties but left open the question whether production of gas used to generate electricity would be similarly taxed. ML & P conceded during oral argument before us that it does not seek a refund for or contend that it is exempt from the taxes paid for gas produced and sold to third parties, per its agreement with DNR.

ML & P paid production and conservation taxes to the Alaska Department of Revenue (DOR) for all gas produced from ML & P's interest in the Beluga River Gas Field but filed a refund claim in December 1999 for those taxes it paid for gas it used to generate electricity for Anchorage. When DOR denied ML & P's refund claim for taxes paid for gas ML & P produced and used to generate electricity, ML & P administratively appealed the decision, ultimately to the Alaska Office of Tax Appeals. The Office of Tax Appeals held on summary judgment that ML & P was responsible for the production taxes at issue. ML & P appealed this decision to the superior court. It reversed, holding that under rules of statutory interpretation, AS 43.55.016(a), Alaska's gas production tax statute,[2] did not apply to ML & P's gas production on its leases at the Beluga Gas Field

---

1. Anchorage Municipal Charter § 19.14; Anchorage Municipal Code (AMC) 26.10.060 (1996) ("Utilities owned by the municipality ... shall be operated in such a manner as to provide a reasonable profit in accordance with applicable regulations of the state public utilities commission....").

2. Effective July 1, 1999, the legislature repealed AS 43.57.010, the similarly worded oil and gas

conservation tax statute. Ch. 34, § 6, SLA 1999. This appeal thus concerns ML & P's gas conservation tax liability prior to that effective date. Because the analyses for 1996–1997 tax liability under both AS 43.57.010 and AS 43.55.016(a) are effectively the same, we will refer for simplicity only to production (or severance) taxes imposed under AS 43.55.016(a).

when read in conjunction with AS 29.71.030, Alaska's municipal tax exemption statute. DOR appeals the superior court's decision.[3]

## III. STANDARD OF REVIEW

We independently review the merits of the administrative decision when the superior court acts as an intermediate court of appeal.[4] We apply our independent judgment to questions of law such as statutory interpretation if a decision does not involve an agency's special expertise or determination of fundamental policies.[5] When interpreting a statute, we apply a sliding scale approach in which the "plainer" the meaning of the statutory language, the more convincing any contrary legislative history must be.[6] We construe the statutory language according to its common usage unless the word or phrase at issue has "acquired a peculiar meaning, by virtue of statutory definition or judicial construction."[7]

Because the issue whether municipalities are exempt from gas production taxes is one of first impression, we adopt "the rule of law that is most persuasive in light of precedent, reason, and policy."[8]

## IV. DISCUSSION

A. **Alaska Statute 43.55.016(a) Does Not Satisfy the "Expressly Provides" Requirement of AS 29.71.030 for Taxation of Municipalities.**

The question here is whether ML & P, as a department of the Municipality of Anchorage, is subject to the gas production tax imposed by AS 43.55.016(a). Whether it is depends on whether the statute satisfies the requirement of AS 29.71.030 that, in or-

der to tax a municipality, a state law must "expressly" provide that it taxes the municipality.

DOR argues that AS 43.55.016(a), the gas production tax statute, imposes a tax on ML & P for the gas it produced and used to generate electricity. DOR reasons that AS 43.55.016(a) expressly levies a tax for "all gas produced," and that, by application of AS 43.55.900(13), AS 43.55.016(a) therefore expressly exempts only production from interests owned by the federal government or the state.

Alaska Statute 43.55.016(a) provides in pertinent part: "There is levied upon the producer of gas a tax for all gas produced from each lease or property in the state, less any gas the ownership or right to which is exempt from taxation." Alaska Statute 43.55.900(13) defines "ownership or right to which is exempt from taxation" as "any ownership interest of the federal government or the state." Alaska Statute 43.55.016(a) thus imposes a tax for "all gas produced" except gas to which the ownership or the right is exempt. Alaska Statute 43.55.900(13), which defines the exempted ownership and rights to which AS 43.55.016(a) refers, does not state that it includes ownership interests of municipalities. DOR consequently concludes that gas produced by the municipality is not exempted from taxation, making it subject to the express tax on "all gas produced."

ML & P contends, however, that it is not liable for gas production taxes because the plain language of AS 29.71.030 generally exempts municipalities from taxation unless the law expressly provides for taxing municipalities, and AS 43.55.016(a) fails to do so.

---

3. ML & P's original refund claim covered taxes for gas produced from November 1996 through November 1999. ML & P has since withdrawn its claim for taxes paid in 1996. This appeal therefore pertains to taxes underlying ML & P's 1997 refund claim. The 1998 and 1999 refund claims are pending resolution of this appeal.

4. *Fairbanks N. Star Borough v. Golden Heart Utils., Inc.,* 13 P.3d 263, 266 (Alaska 2000); *Thompson v. United Parcel Serv.,* 975 P.2d 684, 687–88 (Alaska 1999).

5. *Municipality of Anchorage v. Suzuki,* 41 P.3d 147, 150 (Alaska 2002); *State, Dep't of Revenue v.*

*Dyncorp & Subsidiaries,* 14 P.3d 981, 985 (Alaska 2000); *Thompson,* 975 P.2d at 688; *Nat'l Bank of Alaska v. State, Dep't of Revenue,* 642 P.2d 811, 815 (Alaska 1982).

6. *Coughlin v. Gov't Employees Ins. Co. (GEICO),* 69 P.3d 986, 988 (Alaska 2003).

7. *Muller v. BP Exploration (Alaska) Inc.,* 923 P.2d 783, 788 (Alaska 1996).

8. *Id.* at 787.

Alaska Statute 29.71.030 states: "A state law or regulation may not assess or tax, or be construed to assess or tax, a municipality unless the law or regulation *expressly* provides that the municipality is to be assessed or taxed by the particular law or regulation." (Emphasis added.)

The superior court declined to interpret "expressly" in section .030 to include laws or regulations whose construction implicitly allows for taxation of a municipality:

> The term "expressly" is not a term that has acquired a peculiar meaning through legislative or judicial definition. As a result, it is appropriate to use a common meaning of the word when interpreting the statute. Webster's Revised Unabridged Dictionary defines "express" as; (1) exactly representing; exact, (2) directly and distinctly stated; declared in terms; not implied or left to inference; made unambiguous by intention and care; clear; not dubious. That same dictionary defines "expressly" as; in an express manner; in direct terms; with distinct purpose; particularly. Alaska cases have consistently interpreted express provisions as those that are stated in legislation.

(Citations omitted.)

We addressed in *Alaska Housing Finance Corp. v. Salvucci*[9] the question of what constitutes "express" in context of statutory imposition of a burden. The issue in *Salvucci* was whether the Whistleblower Act, which prohibits retaliatory actions by a public employer against an employee, contains the "express and specific statutory authority" required to rebut the presumption against assessing punitive damages against governmental entities.[10] The pertinent Whistleblower Act provision states, "A person who alleges a violation of [the Whistleblower Act] may bring a civil action and the court may grant appropriate relief, including punitive

damages."[11] Because the language of the statute did not expressly state that punitive damages were authorized against public employers (rather than against individual government employees), we held that punitive damages, although mentioned by the statute, were not available against public entities in Whistleblower Act claims.[12]

Alaska Statute 43.55.016(a) similarly does not state expressly that it taxes municipalities. It does not mention municipalities at all. To construe AS 43.55.016(a) as taxing municipalities, one would have to refer first to AS 43.55.900(13), note that its listed exemptions do not include municipal interests, and then conclude by negative inference that municipalities are not exempted. This inference, while logical, is not the express provision required by AS 29.71.030.

DOR reminds us that tax exemptions should be strictly construed in favor of tax liability,[13] but this rule of construction does not apply here. Alaska Statute 29.71.030 states not only that a law or regulation "may not assess or tax" without expressly providing that the municipality will be taxed, but that it will not be "construed to assess or tax" a municipality unless it expressly provides for municipal taxation. The statute is the legislature's self-imposed blanket prohibition to prevent an unintended taxation of municipal interests or activities; section .030 leaves no room for taxing a municipality by statutory interpretation founded on implication or inference.

The parties have not referred us to any legislative history of AS 43.55.016(a) suggesting that municipalities should be exempt from the gas production tax statute. Likewise, nothing in the legislative history of AS 43.55.900(13) suggests, as DOR argues, that it contains an exhaustive list of exemptions applicable to AS 43.55.016(a). Because it

---

9. *Alaska Hous. Fin. Corp. v. Salvucci*, 950 P.2d 1116 (Alaska 1997).

10. *Id.* at 1124 (citing *Johnson v. Alaska State Dep't of Fish & Game*, 836 P.2d 896, 906 (Alaska 1991)).

11. *Id.* (quoting AS 39.90.120(a)).

12. *Id.* at 1125 ("Instead of being express and specific as to whether punitive damages can be awarded against public employers, the statute is noncommittal and ambiguous on this point.").

13. *Ketchikan Gateway Borough v. Ketchikan Indian Corp.*, 75 P.3d 1042, 1045 (Alaska 2003); *Sisters of Providence in Wash., Inc. v. Municipality of Anchorage*, 672 P.2d 446, 447 (Alaska 1983).

appears that municipalities have only recently become involved in producing natural gas, it is not surprising that the parties have produced for us no indication the legislature ever considered whether municipalities should be exempt from production taxes when it enacted the definition of exempted interests in 1973.[14]

Because no intent contrary to the plain meaning of the statutory language is evident and because AS 43.55.016(a) does not mention municipalities at all, we hold that AS 43.55.016(a) does not satisfy AS 29.71.030's requirement that statutes must "expressly" impose a tax on municipalities.

### B. Alaska Statute 29.71.030 Applies even if ML & P's Gas Production Is Commercial.

■ The plain meaning of AS 29.71.030 requires that to impose a tax on a municipality, the law must "expressly" provide that municipalities are to be taxed. Section .030 draws no distinction between commercial and noncommercial activities. Assuming ML & P's production of gas used to generate electricity for Anchorage were commercial in nature, AS 29.71.030 contains no exception that would excuse its application to the gas production tax statute.

DOR urges, however, that existing precedent and the Alaska Constitution support taxing municipalities engaged in commercial enterprise. It relies on article IX, section 4 of the Alaska Constitution, which states in part:

> The real and personal property of the State or its political subdivisions shall be exempt from taxation under conditions and exceptions which may be provided by law. All, or any portion of, property used exclu-

sively for non-profit religious, charitable, cemetery, or educational purposes, as defined by law, shall be exempt from taxation.

This provision, however, exempts certain *property* from taxation, not *activities*. Even assuming that the gas production tax operates like a property tax, the constitution contains no "use" restrictions for exemptions afforded to public property. Section 4's first clause, which states that all property belonging to the State and its subdivisions shall be exempt from taxation, does not on its face address—much less impose—conditions on use. In contrast, the second clause explicitly lists exemptions based on the nature of use. Charitable purposes cases relied upon by DOR, such as *Evangelical Covenant Church of America v. City of Nome,* do not involve the type of statutory exemption asserted by ML & P.[15] Other cases cited by DOR to support its claim that other jurisdictions tax municipalities for their commercial activities relate to statutes that either explicitly address municipalities engaged in private business or explicitly provide exemptions based on the property's use rather than its ownership.[16] These cases do not support nullifying the tax exemption afforded by AS 29.71.030 merely because the activity may be commercial.

The parties have not brought to our attention any indication of a legislative intent to adopt an exception that is not found in the plain words of the statute. Public policy considerations also do not support an interpretation that would change the meaning of AS 29.71.030. Such arguments should be addressed to the legislature. Public policy cannot justify an interpretation nowhere supported in the words or history of a statute.[17]

---

14. Ch. 4, § 3, FSSLA 1973.

15. *Evangelical Covenant Church of Am. v. City of Nome,* 394 P.2d 882 (Alaska 1964).

16. *City of Phoenix v. Moore,* 57 Ariz. 350, 113 P.2d 935, 937 (1941) (referring to statute stating that "person" includes municipal corporations); *Dep't of Treasury v. City of Evansville,* 223 Ind. 435, 60 N.E.2d 952, 953 (1945) (addressing statutory amendment which changed definition of taxable "person" to include "any ... municipal corporation ... engaged in private or proprie-

tary activities or business"); *City of Liberal v. Seward County,* 247 Kan. 609, 802 P.2d 568, 570 (1990) (finding that royalty interests on city property leased to commercial oil and gas producers were not tax exempt under provisions exempting all property "used exclusively" by the municipality).

17. *Wold v. Progressive Preferred Ins. Co.,* 52 P.3d 155, 161 (Alaska 2002) ("[S]tatutes themselves reflect the state's public policy; hence, we have recognized that 'public policy ... cannot override a clear and unequivocal statutory require-

## V.  CONCLUSION

Because we conclude that the gas production statute, AS 43.55.016(a), does not "expressly" tax municipalities, we AFFIRM the superior court's decision without reaching the alternative arguments raised by ML & P.

ment.' ") (quoting *Curran v. Progressive Northwestern Ins. Co.,* 29 P.3d 829, 833 (Alaska 2001)); *Tipton v. ARCO Alaska, Inc.,* 922 P.2d 910, 913 (Alaska 1996).