Submitted on brief of appellants September 24, reversed November 19, 1929

GEORGE E. DIX ET AL *v.* PORT OF PORT ORFORD ET AL.

(282 Pac. 109)

158

For appellants there was a brief over the name of *Mr. J. C. Johnson.*

No appearance for respondent.

BELT, J.  ▆ The defendant Port of Port Orford appeals from a decree enjoining it from selling or conveying certain dock and wharfage property to the Inman Lumber and Development company pursuant to the terms of a written contract. The case is sub-

mitted solely on the brief of appellant, although it involves principles of grave importance to the public, if not the plaintiffs. In many jurisdictions the failure of respondent to file a brief is looked upon as a confession of error: 3 C. J. 1446. Under the rules of this court it is a waiver of the right to be heard: *Johnson v. White,* 60 Or. 611, (112 Pac. 1083, 119 Pac. 769).

In 1919, the defendant Port of Port Orford, a municipal corporation, was organized pursuant to and by virtue of chapter 3 of title X. L. I., Oregon Laws. Its primary object and purpose as declared in the act was to promote "maritime shipping and commercial interest of such corporation." From the proceeds of a bond issue of $55,000 authorized by vote of the people, the board of commissioners of the port purchased a dock site and thereafter erected a wharf where a toll was charged for goods and commodities shipped to or from the port. At the time the port engaged in this commercial enterprise, Curry county was a comparatively isolated section of the state and there was grave need of establishing communication with the business world. The day of good roads had not yet dawned. A few years later, however, the wonderful Roosevelt highway was completed in the northern part of Curry county. As a result, the business of the port materially decreased. In fact, trucks invaded the field of transportation to such an extent that the revenues of the port were not sufficient to cover maintenance and operating expenses. Taxes on account of bond issue became a vexatious burden. By reason of statutory limitation of indebtedness, additional funds could not be secured to repair or improve greatly impaired docking facilities. The situation became so acute that the board of commissioners, in April, 1927, entered into a

written contract with the Inman Lumber and Development company, a corporation engaged in the lumber business, whereby it agreed to sell the dock and wharf, together with certain equipment and easements used in connection therewith, at a price of $60,000—a sum sufficient to retire outstanding bonds. The plaintiffs, who are landowners and taxpayers of the port, thereupon instituted this suit to enjoin the sale.

Did the commissioners have authority to sell this property? There is no indication of fraud or that the purchase price was inadequate. The port, by virtue of § 7162, O. L., had the power "to make all contracts, hold, receive and dispose of real and personal property and to do all other acts and things which may be requisite, necessary or convenient in carrying out the objects of said corporation * * *." Under par. 7, of § 7163, O. L., as amended by chapter 205, G. L. O. for 1921, its general powers are thus stated:

"* * * to do such other acts and things as shall tend to promote the maritime shipping and commercial interest of such corporation and to acquire, hold, use, enjoy and dispose of and convey such real and personal property, and to make any and all contracts and to do any and all other acts and things which may be or may become requisite, necessary or convenient in carrying out all or any one or more of the powers in this act granted it."

As a general rule the power of a municipality to convey property is equal to its power to acquire it. At common law a municipal corporation, unless restrained by its charter, could dispose of property in the same manner as private individuals: 19 R. C. L. 772. In the instant case, we do not think that the property acquired through purchase was dedicated to a public use. True, it inured to the benefit of the public, but the port was

engaged in this commercial enterprise for profit as a toll was charged any shipper who used the wharf or docking facilities. It was not open to indiscriminate use by the public. In the maintenance and operation of this property the port was acting in a proprietary capacity: *Esberg Cigar Co. v. Port,* 34 Or. 282 (55 P. 961, 43 L. R. A. 445). It held title to property which had been acquired for strictly corporate uses: *City National Bank v. Kiowa,* 104 Okl. 161, (230 P. 894, 39 A. L. R. 206 (note)). It is not a case of holding title to property in trust where there has been a dedication to a public use. It is not analogous to streets or to public highways. Due to changed conditions the board of commissioners in the exercise of their discretion determined that this property was no longer adapted to the purpose for which it was originally intended and that the best interests of the taxpayer would be subserved by disposing of the same. In our opinion the lower court erred in concluding that the port was exercising a governmental function in the maintenance and operation of this dock and wharf.

In reaching our conclusion we have assumed the statement of facts by appellants to be correct. Where respondents fail to file a brief it is not incumbent upon us to search the record to ascertain the facts, although, in our discretion, we may do so if justice so demands.

The decree of the lower court enjoining the sale is reversed and the suit dismissed.

REVERSED AND SUIT DISMISSED.