Argued February 24; reversed March 8, 1932

# MOLLENCOP *v.* CITY OF SALEM

(8 P. (2d) 783)

*Robin D. Day,* of Salem, for appellant.
*William H. Trindle,* of Salem, for respondent.

KELLY, J. The testimony discloses that during the time mentioned herein defendant was the owner of the airport in question; that on the 6th day of August, 1929, an agreement in writing was executed by defendant and one Lee Eyerly, by the terms of which it was agreed that for a term of two years said Eyerly would superintend the operation and management of said airport, and, among other things, collect all fees and rentals for the city, make a report to the city on the first of each and every month, and at that time account and pay over to the city all revenues due the said city; it being therein further provided, "that in event field lighting equipment is installed during the period of this contract, the city shall furnish and pay for the electricity and power to operate such equipment; and furnish all equipment necessary for fueling and servicing aeroplanes where such equipment is not already installed on the airport field"; that the use of said field by said Eyerly is "subject to such rules and regulations as the city council may from time to time adopt and impose; * * * in event the party of second part shall engage in any regular transport service to or from the field he shall pay and account for the regular fees as are exacted from others engaged in similar operations to or from the said airport field; * * * and except the things mentioned herein, the city shall have as its own to lease, sell or operate any and all concessions or things appurtenant or connected with the operation of the said municipal airport which might be of profit and produce revenue for the city of Salem."

That on the 30th day of March, 1930, pursuant to a published advertisement that aeroplane flights would then be afforded to the public at said field at the rate of one cent per pound of weight of each individual

applying and paying therefor, plaintiff with other members of her family repaired to said airport. That for about ten minutes before getting out of her automobile to go upon said flying field, plaintiff observed the crowd which was there and saw that it was passing over the wire in question. That at a distance of thirty or forty feet from where plaintiff entered the grounds in the proximity of the scales which were being used to weigh the passengers, who were taking flights, "they were calling for people to come and be weighed." Plaintiff testified that she looked for an entrance or passageway through the wire to said scales but found none; that plaintiff with an infant in her arms, walked along said wire until she came to a low place then, while she was in the act of stepping over the wire, some one gave the wire a jerk or flip and threw plaintiff violently to the ground. Plaintiff testified that one end of the wire was fastened to a tree, but she was unable to say where or how the other end was attached.

That among the other specifications in plaintiff's complaint, it is charged as negligence,

"that the defendant stretched, placed and maintained a single wire across its airport field about twelve or fifteen inches above the ground between the entrance of said airport field and its scales where said defendant directed its invitees and the plaintiff herein to be weighed; * * * that defendant failed to make a passageway through said wire; that the defendant did not keep proper attendants to prohibit raising, casting about and lowering of said wire; that while plaintiff was passing over said unguarded wire as an invitee of the defendant at said airport, by reason of defendant's failure in not having said wire securely fastened so that the same could not be raised and lowered, * * * without fault upon her part, plaintiff stepped over the same with her left foot and as she was raising her right foot over said wire defendant

herein wrongfully and carelessly raised and permitted said wire to be raised so as to trip plaintiff, and the same did trip her, causing her to fall on the ground.''

At the conclusion of plaintiff's testimony, defendant moved for an order of nonsuit, ''on the grounds and for the reason that plaintiff has failed completely to prove any of the material allegations of his complaint and particularly has failed to prove the city was operating the municipal airport in a proprietary and not a governmental capacity, and has failed to prove the city was negligent in any manner whatever which contributed in any way to the injury complained of by the plaintiff.''

■ The written contract discloses that the city was not devoting the airport exclusively to municipal or governmental uses, but had undertaken to conduct an enterprise there of a commercial character from which it sought to derive revenue. In the state of the record when plaintiff rested her case, by virtue of said contract, there was a prima facie showing that the airport was owned and operated by defendant city in its corporate or proprietary capacity: *Hise v. City of North Bend,* 138 Or. 150 (6 P. (2d) 30); *Dix v. Port of Port Orford,* 131 Or. 157 (282 P. 109); *Bennett v. City of Portland,* 124 Or. 691 (265 P. 433); *Mackay v. Commission of Port of Toledo,* 77 Or. 611 (152 P. 250); *Esberg Cigar Co. v. Portland,* 34 Or. 282, 290 (55 P. 961, 43 L. R. A. 435, 75 Am. St. Rep. 651); Vol. 6, McQuillin, Municipal Corporation (2d Ed.) 883, § 2844, note 80, and cases there cited.

■ There was evidence of the maintenance at the airport of the loose and sagging wire. Whether permitting such a wire to be and remain as and where it was while the public was in attendance upon the premises constituted negligence was a question to be submitted

to the jury under appropriate instructions as to the law. We cannot say, as a matter of law, either that it did or did not constitute negligence. Stating it most favorably for defendant, reasonable minds could honestly differ upon the question. Whether the defendant exercised ordinary care to prevent injury to an invitee upon its flying field, when so operated, is one of fact: *Bennett v. City of Portland,* supra.

Owing to plaintiff's testimony to the effect that some one flipped the wire as she was in the act of stepping across it and thereby caused her to fall, we are called upon to consider the question of whether the record supports plaintiff's allegation that defendant's alleged negligence was the proximate cause of plaintiff's injury.

"Where an intervening, distinct, independent and efficient cause breaks a causal relation between the original wrong and the injury, this intervening cause then becomes the proximate cause of the injury and the remoter cause cannot be made the basis of an action for the recovery of damages. 7 Thompson, Commentaries on the Law of Negligence, 13, § 54.

"Where the character of the intervening act was such that its probable or actual consequence could reasonably have been anticipated by the original wrongdoer, then the causal relation is not broken and the original wrongdoer is responsible for all the consequences resulting from the intervening act." Ibid, section 57.

This court applied these rules in *Poole v. Tilford,* 99 Or. 585 (195 P. 1114), wherein Mr. Justice (now Chief Justice) HENRY J. BEAN quotes from the case of *Lane v. Atlantic Works,* 111 Mass. 136, as follows:

"In actions of this description the defendant is liable for the natural and probable consequences of his negligent act or omission. The injury must be the direct result of the misconduct charged; but it will not

be considered too remote, if, according to the usual experience of mankind, the result ought to have been apprehended.

"The act of a third person, intervening and contributing a condition necessary to the injurious effect of the original negligence, will not excuse the first wrongdoer, if such act ought to have been foreseen. The original negligence still remains a culpable and direct cause of the injury. The test is to be found in the probable injurious consequences which were to be anticipated, not in the number of subsequent events and agencies which might arise."

■ Applying these principles to the case at bar, we hold that where the defendant operates a municipal airport to which the public is invited, and in the maintenance of such airport defendant suffers a loose and sagging wire to remain about its premises for the general public to cross, it ought not to be declared, as a matter of law, that the defendant could not reasonably have anticipated that some one would flip or move such wire in such a manner as to cause some other person to be thrown while trying to step over it.

■ There were but two grounds upon which defendant's motion for nonsuit was based, (1) failure to prove that the city was operating the municipal airport in a proprietary capacity, and (2) failure to prove that the city was negligent in any manner whatever contributing to plaintiff's injury. We are restricted to these two grounds in determining whether the order of nonsuit was justified. The record, as we view it, renders both of them untenable.

■ This court has held that the grounds stated in a motion for nonsuit are conclusive on the moving party and that he cannot raise for the first time on appeal a ground not stated in his motion filed in the court below: *Hunt v. Ring et al.,* 125 Or. 111 (265 P. 1094);

*Caldwell Banking & Trust Co. v. Porter,* 52 Or. 318 (95 P. 1, 97 P. 541). Despite this rule, defendant urges that plaintiff is shown to be guilty of contributory negligence in attempting to step across the wire in suit. The course that an ordinarily careful woman would take under all the circumstances attending plaintiff at the time is determinative of the question. Reasonable minds honestly differ as to whether plaintiff acted as an ordinarily careful woman; hence, whatever conclusion ultimately may be drawn from the testimony upon that point, we hold that it cannot be said, as a matter of law, that the plaintiff was negligent in that respect.

The judgment of the circuit court is reversed and the cause remanded.

BEAN, C. J., RAND and ROSSMAN, JJ., concur.