McLaughlin *v.* City of Chattanooga *et al.*

(*Knoxville*, September Term, 1943.)

Opinion filed February 5, 1944.

WHITAKER, HALL, HAYNES & ALLISON, of Chattanooga, for complainant.

MOON & ANDERSON, of Chattanooga, for the City.

MR. JUSTICE CHAMBLISS delivered the opinion of the Court.

By the bill in this cause a declaration is sought as to the power of the City of Chattanooga to expend public funds in the purchase of lands for municipal airport purposes located outside of the corporate limits, lying partly in the State of Tennessee and extending over into the State of Georgia.

It appears that an urgent need exists for additional airport facilities in the vicinity of and convenient to the City of Chattanooga; and that an ordinance appropriating $200,000 from public funds of the City of Chattanooga has recently been passed for the purpose of acquiring land for an airport. This ordinance sets forth clearly the need for and the object of the proposed appropriation and we quote therefrom as follows:

"Whereas, the Administrator of Civil Aeronautics of the United States Department of Commerce has designated as necessary for National defense a project for development of an airport, which project consists of approximately nine hundred (900) acres of land—three hundred (300) acres being in Tennessee and six hundred

(600) acres adjacent thereto being in the State of Georgia; and

"Whereas, as a condition precedent to release and operation of the project the Administrator requires that the City of Chattanooga have certain property interests in the lands to be improved under the project, and requires that the City of Chattanooga shall purchase a tract of land consisting of approximately nine hundred (900) acres; and

"Whereas, Engineers of the War Department and Civil Aeronautics Authority have made an investigation and inspection of lands in and near the City of Chattanooga, and have determined that the only site available for an Airport within a reasonable distance of the corporate limits of the City of Chattanooga is the tract consisting of approximately nine hundred (900) acres, three hundred (300) acres of which are within Hamilton County, Tennessee, and six hundred (600) acres adjacent thereto in the State of Georgia, all of which is within three miles of the corporate limits of the City of Chattanooga;

"Now, Therefore,

"Section 1: Be it ordained by the Board of Commissioners of the City of Chattanooga, Tennessee, that there be and hereby is appropriated from any funds available the sum of Two Hundred Thousand ($200,000.00) Dollars to the department of Public Utilities, Grounds and Buildings, to be used in acquiring, by purchase or otherwise, a tract of land consisting of approximately nine hundred (900) acres—three hundred of which lie within the State of Tennessee and approximately two miles from the corporate limits of the City of Chattanooga, and six hundred (600) acres adjacent thereto located in the State of Georgia."

The Charter of the City of Chattanooga was amended by Chapter 2, Private Acts of 1929, so as to provide:

"That the City of Chattanoooga . . . is hereby empowered in its corporate capacity to establish, construct, equip, maintain and operate an airport for the use of aeroplanes and other aircraft, and may through its Board of Commissioners lease or acquire real property for such use either within or without the corporate limits of said City."

Also, Section 3334 of the Code of Tennessee provides:

"All municipal corporations may, for corporate purposes, hold real estate beyond their limits."

In addition to the authority granted by the above Charter provision and Code Section, all municipalities and Counties are authorized by Chapter 74, Public Acts of 1931, (Section 2726.13, Williams Ann. Code), known as the Uniform Airports Act, to acquire land for airport purposes, either within or beyond their geographical boundaries.

It is well settled by decisions of this Court that a municipality may own property for airport and other purposes lying beyond its corporate limits, and may there exercise the usual powers incident to ownership. *Silverman* v. *Chattanooga*, 165 Tenn., 642, 57 S. W. (2d), 552; *Newman* v. *Ashe*, 68 Tenn., 380; *Reams* v. *McMinnville*, 155 Tenn., 222, 291 S. W., 1067, and *City of Nashville* v. *Vaughn*, 158 Tenn., 498, 14 S. W. (2d), 716.

Moreover, in the *Silverman case, supra*, it was held that the City had the authority to enforce its ordinances in such outlying territory. But here it is the right of the City to own lands lying not only beyond the corporate limits, but also beyond the State line. This presents a

question not heretofore directly passed upon by this Court.

In the first place, there is no express limitation to the State of Tennessee in the legislative grant of authority to the municipality. It will be observed that the language is "either within or without the corporate limits of said City." The brief of counsel for the City, appellee here, quotes the following pertinent expression from *Howard v. Atlanta*, 190 Ga., 730, 733, 734, 10 S. E. (2d), 190, 193:

"The phrase 'within and without the geographical limits of such municipalities' is as broad as the universe, since every point is either within or without the limits of a municipality. In its broad sense it includes territory which is within the confines of a municipality and all of that which is not so situated, including that of another municipality."

As suggested by the last line above quoted, the Court in that case was considering the power of the City of Atlanta to condemn and acquire for airport purposes property not only located beyond the municipal limits of Atlanta, but within the adjacent City of East Point.

This broad construction of powers conferred upon a municipality by the Legislature, without express limitation, is in accord with the general rule thus stated in 19 R. C. L., at p. 770:

"When, however, power over a particular subject matter has been delegated to a municipal corporation by the legislature without any express limitations, the extent to which that power shall be exercised rests in the discretion of the municipal authorities, and as long as it is exercised in good faith and for a municipal purpose, the courts have no ground upon which to interfere. *State v. Tampa Waterworks Co.*, 56 Fla., 858, 47 So., 358, 19

L. R. A. (N. S.), 183; *City of Crawfordsville* v. *Braden*, 130 Ind., 149, 28 N. E., 849, 14 L. R. A., 268, 30 Am. St. Rep., 214; *Lucia* v. *Montpelier,* 60 Vt., 537, 15 A., 321, 1 L. R. A., 169 and note.''

It would seem, therefore, that if the suggested limitation exists, it must be in a limitation in the power of the State to authorize the holding of title to lands beyond its borders. If the State can acquire and hold such title, then. unquestionably the State can delegate such authority to its municipal agency or arm.

It must be borne in mind that we are concerned here with the power only to acquire and own property in the adjoining State, with the rights of control ordinarily incidental to ownership, the dominant sovereignty of the foreign State being recognized as unimpaired and exclusive. As said in 3 McQuillan on Municipal Corp. (2nd Ed., Revised), Sec. 1210: ''It is well to bear in mind the distinction between the right to acquire or own property outside the limits [of the State], and the power to exercise right of sovereignty over such property.''

In the instant case the City of Chattanooga is not proposing to act in its governmental, but in its corporate, or proprietary capacity only. In this capacity it does not and may not exercise the power of eminent domain, or police power generally. Nor is it exempt from taxation or entitled to preferential treatment in this regard. It is in this particular capacity and with these restricted powers of control only that the City proposes to acquire and hold this land in the State of Georgia. In this view, we find no legal impediment.

We quote this pertinent expression from the opinion in *Lester* v. *Jackson,* 69 Miss., 887, 890, 11 So., 114, 115:

"All acts of municipalities by which parts of the sovereign power of the state delegated to it are exercised must, of course, be performed within the territory over which the power is delegated, but a right to own property is not a sovereign right. *One state may own land in another, but it can exercise no governmental control over it,* for as to such land it stands in the position of a private person. So a city owning a park without its limits could exercise over it only those rights and powers which spring from ownership, *but it does not follow that because it may not be sovereign it may not be owner.*" (Italics supplied.)

Diligent counsel for the City also rely on and quote from the opinion in *Haeussler* v. *St. Louis*, 205 Mo., 656, 685, 103 S. W., 1034, 1041, the following:

"Another and further contention is that the city cannot make this needed public improvement because one end of the bridge and the approach or approaches thereto will be in the state of Illinois. As has been already noted, there is no question as to the right of the city to construct a bridge one portion of which shall be beyond its own corporate limits. Nor is there any question that for a proper public municipal purpose it may acquire and hold property beyond its own corporate limits. But the question here is: Can it for this public purpose acquire and own land in Illinois and construct and maintain a public bridge over a navigable stream, one end of which must of necessity be in a foreign state? We think so."

For more than one hundred years the State of Georgia has owned valuable property in Tennessee, located within the City of Chattanooga, with clearly implied, if not expressed, legislative, municipal and judicial recognition by this State, the City of Chattanooga, and the Courts. Twenty years ago the Supreme Court of the United States

clearly recognized the right of ownership by Georgia of property in Tennessee. *State of Georgia* v. *City of Chattanooga*, 264 U. S., 472, 480, 481, 44 S. Ct., 369, 370, 68 L. Ed., 796, 799. This suit arose out of an attempt of the City to condemn for street purposes land owned by Georgia located within the municipal limits of Chattanooga and being used for railroad purposes. The right of Georgia to own the land and operate its railway yards thereon was not questioned, but treated as a matter of course. In the course of the opinion the Court used this language, directly pertinent here:

"Land acquired by one state in another state is held subject to the laws of the latter and to all the incidents of private ownership."

And further:

"The sovereignty of Georgia was not extended into Tennessee. Its enterprise in Tennessee is a private undertaking. It occupies the same position there as does a private corporation authorized to own and operate a railroad, and, as to that property, it cannot claim sovereign privilege or immunity."

We need pursue the subject no further. A decree may be entered sustaining the constitutionality of the ordinance challenged and upholding the authority of the municipality to acquire and hold in its proprietary capacity for airport purposes lands in such amount as may reasonably appear to the municipal authorities to be necessary, whether lying within or without (1) the corporate limits, or (2) within or without the State of Tennessee.

Affirmed.