## CITY OF HOUSTON V. JEWELL WOLVERTON ET VIR AND A. G. TURNER ET UX

No. A-4923. Decided March 23, 1955.
Rehearing denied April 27, 1955.
(277 S.W. 2d Series 101)

*Will Sears,* City Attorney, *Richard H. Burks* and *Robert L. Burns,* Assistants City Attorneys, for petitioner.

The Court of Civil Appeals erred in holding that the driver of the automobile, as the employee of said city was engaged in a proprietary, rather than governmental, function at the time of the accident. Parson v. Texas City, 259 S.W. 2d 333; Gotcher v. City of Farmersville, 137 Texas 12, 151 S.W. 2d 565; Barnes v. City of Waco, 262 S.W. 1081.

*M. L. Bennett, Jr.,* of Mormangee, *W. T. Bennett,* of Huntsville, for the Wolvertons, *Davis & Phillips,* of Huntsville, *Col-*

*lins, Garrison, Renfrow & Zeleskey* and *Henry H. Rogers,* all of Lufkin, for respondents.

MR. JUSTICE BREWSTER delivered the opinion of the Court.

This cause is a consolidation of two damage suits filed against the City of Houston, petitioner, and Robt. W. Wood; one by Jewell Wolverton and husband on account of the death of their daughter, Lois Whitt, and the other by A. G. Turner and wife, Ruby V. Turner, for personal injuries suffered by Mrs. Turner as well as medical expenses necessarily incurred as a result of her injuries. Miss Whitt was a passenger in an automobile driven by Mrs. Turner when it collided with an automobile belonging to the City of Houston but driven by Wood. Nobody demanded a jury. After hearing the testimony the trial court rendered a joint and several judgment against the City of Houston and Wood in favor of the Turners for $25,469 and in favor of the Wolvertons for $5,635.

Wood did not appeal. On appeal by the City of Houston the trial court's judgment was affirmed. 270 S.W. 2d 705.

Wood was employed as a dairy inspector for petitioner. He lived at Madisonville and for several years had inspected dairies in eight counties in that area to determine whether the dairies in supplying milk for sale in the City of Houston were complying with the City's milk ordinance "which is based on the United States Public Health Service standard grading ordinance." Wood worked under the supervision of one O'Brien, who was Milk Inspector Supervisor of the Health Department of the City of Houston. To get around over his eight counties Wood was furnished an automobile belonging to petitioner.

On July 29, 1952, this automobile developed some mechanical trouble (it "idled rough"), and Wood decided that it might have a burned valve. So he telephoned O'Brien, who directed him to bring it into Houston on July 31 for a checkup. O'Brien testified that it was not the City's policy to let employees have City cars used by them repaired in outlying cities except in minor cases where the cost would be small; that prior to July 31, 1952, Wood had never been authorized to have any repairs done in outlying sections, in private garages; that it *"costs more money to have our work done out at private garages than it does at the City garage."* (Italics ours.)

O'Brien also testified that, so far as he knew, all passenger

cars used by the City of Houston are repaired in the City garage.

He swore, in response to questions by respondents' counsel, as to whether Wood was bringing the car into Houston to have it "inspected and checked" that such was "one of the reasons for his trip. Of course he was coming into the office for the audit of his book and turn in his money and have the car checked." Pressed on the point, he admitted that the primary purpose of the trip, "as far as I know," related to the car, to have it checked and repaired if necessary.

There was testimony that the City had no fixed dates for Wood to turn in moneys he collected and to audit his permit books; that this was generally done on pay days (the 5th and 20th of each month), unless he had business in Houston at some other day, in which event he would bring in the money and permit books, and thus possibly save the expense of another trip; that Wood had been in Houston on July 20—eleven days prior to the trip here in question.

Trial Judge Rogers filed elaborate findings of fact and conclusions of law. He found that at the time of the collision Wood was in the act of taking the City's car to the garage operated by the City, in accordance with instructions from O'Brien to have the car inspected at the City's garage and repaired, if necessary, and that this was the purpose of the trip, and "but for which the trip would not have been made."

As Wood was driving the car to Houston on the morning of July 31 and when he was about 3 miles south of Huntsville, the car collided with another car which was being driven by Mrs. Turner, who was accompanied by Miss Whitt, to Huntsville where both were employed. Miss Whitt was killed and Mrs. Turner was rather seriously injured.

The trial judge found Wood guilty of negligence in several particulars and that these negligent acts proximately caused the damages suffered by the two ladies; that Mrs. Turner was not guilty of any act of contributory negligence as alleged by defendant; and that the collision in question was not an unavoidable accident.

The big question in this case is whether Wood was working in the governmental or proprietary functions of the City of

Houston in taking the automobile into Houston to the City garage for repairs.

There are numerous decisions by the courts of Texas, as well as by those of other jurisdictions, which distinguish between the governmental and proprietary functions of a city. In City of Houston v. Quinones, 142 Texas 282, 177 S.W. 2d 259, 261, we held: "The underlying test is whether the act performed by a city is public in its nature and performed as the agent of the State in furtherance of general law for the interest of the public at large, or whether it is performed primarily for the benefit of those within the corporate limits of the municipality." That language seems plain enough, but the rub comes when it is sought to apply the test to a given state of facts.

For example, petitioner contends that since Wood was taking his permit books and money he had collected to Houston, which must be regarded as a governmental function, along with his purpose to take the car to a Houston garage for inspection and possible repair, the latter purpose cannot destroy the fact that taking the car to Houston was in the interest of a governmental function of the City.

In the first place, this contention ignores the trial judge's finding, on disputed evidence, that the trip to Houston would not have been made had Wood not gone in response to instructions from O'Brien to take the car to the garage operated by the City for inspection and repairs, if necessary.

Moreover, if it may be conceded that one purpose of Wood's trip was to aid in the City's governmental functions, that purpose cannot destroy the fact that another purpose of the trip was to aid the City in its proprietary function of operating a garage. This is but the converse of petitioner's proposition stated in its point above quoted, and we think it is supported by our holding in City of Port Arthur v. Wallace, 141 Texas 201, 171 S.W. 2d 480. There agents of the City of Port Arthur had been negligent, both in the City's discharge of its corporate function of maintaining its streets and in its governmental function of providing fire protection, and both proximately caused plaintiff's injuries. We held that the City was liable.

Petitioner's principal contention is presented in its first four points of error, which it groups and argues together. Its application was granted on its third point which asserts that, in the absence of any pleading, proof or finding of any mechan-

ical defect in the automobile or of any negligence in the operation of the City's garage, the Court of Civil Appeals erred in holding that since this court decided in the Shilling case (City of Houston v. Shilling, 150 Texas 387, 240 S.W. 2d 1010, 26 A.L.F. 935) that the operation of a garage used exclusively for the repair of the City's vehicles is a proprietary function, an employee of the governmental function of inspecting milk and dairies, "driving such automobile (found to be necessary for the performance of his duties) en route to the City garage for inspection and possible repairs, was engaged in a 'proprietary function'."

We have concluded that the principles announced in the Shilling case, supra, settle the issue at bar. To be sure, the negligence of the City in that case was that it failed adequately to inspect and repair the brakes of its truck which was thereafter involved in a collision. Nevertheless, in that case, as in this, getting the car to the City garage was necessary and essential to getting it inspected and repaired. So any attempt to distinguish the two cases must fall. We hold that in taking the City's automobile to the City's private garage under the circumstances of this case, Wood was engaged in aiding and accomplishing the proprietary function of petitioner when his negligence caused the injuries and damage suffered by respondents. The opinion in the Shilling case, supra, cites and discusses many supporting authorities; hence we see no good reason to cite or discuss them here. However, one may study with profit the Annotation at page 1117, 110 A.L.R., under the topic heading "Use of municipal automobile as a corporate or as a governmental function," and 38 Am. Jur., Municipal Corporations, Secs. 573, 574, and 575, the last of which (575) discusses "Pecuniary Benefit as Criterion."

Petitioner's fifth point urges that there is no evidence that any necessary repairs on the automobile could have been made at the City's garage. Without attempting to recount all of the evidence, we hold there is *some* to support the trial judge's finding. For example, Wood testified that on the day in question he was taking the car to Houston to the City's garage; that his purpose was to take the car to "the Municipal Garage in Houston, for repair."

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered March 23, 1955.

Rehearing overruled April 27, 1955.

MR. JUSTICE GARWOOD dissenting.

I respectfully dissent. The City automobile in question was acquired for and dedicated to the admittedly governmental function of milk inspection. The automobile repair garage which the City conducted was admittedly a nongovernmental affair. But when the milk inspector is driving the car toward the garage in order to get it repaired, he is not repairing the car or furthering the activity of the city garage. He is doing something incidental to his work of milk inspector. If the City had sent out its garage employee to take possession of the car and drive it to Houston for repairs, the situation might be different, but as it was, the milk inspector no more engaged in the garage end of the City business than any lawyer engages in the garage business when he undertakes to drive his car to the repair shop. The point may be clearer from reversing the situation. Let us suppose that a garage employee, having finished repairing a garbage truck, is driving it to a point where the garbage collector will take it over and proceed to collect garbage. Surely the garage employee is not engaged in the governmental activity of garbage collection.

I think the judgment against the City should be reversed.

Opinion delivered March 23, 1955.

Rehearing denied April 27, 1955.