Jimmy WREN et al., Appellants,

v.

The CITY OF CORSICANA, Appellee.

No. 3487.

Court of Civil Appeals of Texas.

Waco.

Oct. 31, 1957.

Rehearing Denied Jan. 16, 1958.

Dawson & Dawson, Charles L. Price, Corsicana, for appellant.

Johnny M. Chirafis, City Atty., and Wm. J. McKie, Corsicana, for appellee.

H. P. Kucera, City Atty., Dallas, Robert J. Potts, Jr. and Doren R. Eskew, Austin, amici curiae.

TIREY, Justice.

This is an appeal from an order granting motion for summary judgment of the City of Corsicana. At plaintiffs' request the trial court filed findings of fact and conclusions of law. They are substantially as follows:

"Findings of Fact

"1. Suit brought by Plaintiff against the City of Corsicana alleging that City employee was burning grass near an airplane storage hangar of the Corsicana Municipal Airport and the fire spread and burned up the hangar as well as Plaintiff's airplanes and equipment stored therein; that the issue of negligence of such agents of the City of Corsicana is not an issue in this hearing, the issues determined are those set in the Motion for Summary Judgment.

"2. The Corsicana Municipal Airport was, on October 15, 1955, and still is, maintained and operated by the City of Corsicana, Texas, which is a municipal corporation of Navarro County, Texas, operating under a Home Rule Charter.

"3. In 1938, the City of Corsicana duly passed an ordinance prescribing conditions precedent before suit for damages for any injury to any person or property may be maintained against the City, which in substance declares that no such suit shall be brought without first obtaining the consent of a majority of the City Commissioners at a regular meeting of the Commissioners, and further that such consent shall not be granted unless the party claiming the injury notifies the Chairman of the Commission in writing within ninety days after the injury or damage of the time, place and circumstances of the injury. A properly certified copy of this ordinance is included in the transcript of this case, and this ordinance has never been amended or repealed.

"4. The City of Corsicana has never expressly adopted Article 46d (Texas Municipal Airport Act) by formal ordinance.

"5. Since the opening of the Corsicana Municipal Airport in 1947, the City has regularly employed one man to work at the airport and to act as manager.

"6. Mr. Glen Cumby, who has been manager of the Airport since 1946, also maintains an airplane repair shop, from which operation he personally derives all profits; that the City of Corsicana derives profits from the sales of gasoline and oil which he uses in his repair service.

"7. The Corsicana Municipal Airport has never accommodated any scheduled commercial passenger or freight flights.

"8. The Corsicana Municipal Airport has been used by Corsicana citizens and citizens outside of Corsicana in the ratio of about fifty per cent.

"9. The airplanes of citizens of Corsicana, as well as airplanes of persons outside Corsicana, have been hangared from time to time at the Corsicana Airport.

"10. Since the Airport's beginning in 1947, the City has never operated the Municipal Airport as a profit.

"11. Approximately thirty airplanes were stored at the airport at the time of the fire on October 15, 1955.

"12. At the time of the fire in question, there was a single lean-to office adjoining a single airplane stor-

age hangar at the Airport. This was the only building located at the Airport. This lean-to contained a reception room, office with chairs, telephone, water fountain and rest rooms for public use.

"13. The land on which the Airport is situated was leased in 1947 from J. W. Edens, Jr., for a ten year period at a yearly rental of $2000.00.

"14. There is a private charter service owned by Joe Stroube of Corsicana, which operates from the Corsicana Airport.

"15. The City sells gasoline and oil to persons using the Airport and charge a storage fee to persons using the airplane storage hangar.

"16. There is a 2000' x 220' concrete parking apron located at the Airport, which is used for a runway. There are also three dirt runways, the longest of which is about 3500 feet.

"Conclusions of Law

"1. The Ordinance of the City of Corsicana requiring a party to first obtain consent of the City Commission before bringing suit against the City for damages to his property violates Art. 1, Sec. 12 [13] of the Texas Constitution, and the ninety day written notice provision in the same ordinance is also void since mutually dependent on the consent provision.

"2. Art. 46d–15, Texas R.C.S. (Municipal Airport Act) is applicable in this case even though the City of Corsicana has never expressly adopted the Act.

"3. The operation of the Airplane storage hangar at the Corsicana Municipal Airport on October 15, 1955 was an essential part of the operation of the Airport itself.

"4. The purpose of Art. 46d–15, Texas R.C.S. was to make the operation of municipal airports a governmental function.

"5. The operation of the Corsicana Municipal Airport by the City of Corsicana on October 15, 1955 was and is now a governmental function, benefiting the public generally.

"6. Art. 46d–15, Texas R.C.S. precludes Plaintiff from recovering in this damage suit, because it declares that the operation and maintenance of a municipal airport is a governmental function.

"7. The burning of the grass at the Municipal Airport by the City employee on October 15, 1955 was an essential part of the operation and maintenance of the Airport itself."

The judgment is assailed on three points. They are substantially: The court erred (1) in granting defendant's motion for summary judgment, because the operation and maintenance of the Corsicana Municipal Airport was a proprietary function; (2) because Art. 46d–15, Vernon's R.C.S. was not intended to restrict the tort liability of a municipality in the operation and maintenance of an airport and does not so exempt it; and (3) because such Article violates the due process and equal protection clauses of the State and Federal Constitutions, Vernon's Ann.St.Const. art. 1, §§ 3, 19; Const.U.S.Amend. 14.

Plaintiffs grounded their cause of action on the negligence of the airport in its maintenance, and particularly with reference to the cutting and burning of the grass at the airport, which resulted in their airplanes being destroyed. The City of Corsicana operates under a Home Rule Charter.

Plaintiffs alleged that a Negro employee of the City, while acting in the scope of his employment for said City, was burning grass near an airplane storage hangar of the Corsicana Municipal Airport, when through certain acts of negligence the fire spread and consumed the hangar and planes and equipment stored there. They specifically alleged that the City was negligent in

(a) leaving the grass fire unattended, (b) in starting a grass fire when there was a high and gusty wind blowing, (c) in failing to have on hand ready for use any equipment to prevent the fire from spreading to the airplane storage hangar, (d) in failing to keep a proper lookout over the fire; (e) in employing J. P. Ellison to perform an act that he was not mentally capable of performing, (f) in burning the grass instead of cutting it, (g) in allowing the grass and weeds to grow up instead of keeping them cut, (h) in starting a fire too close to a highly inflammable structure, and (i) in starting a fire close to a highly inflammable structure when a high and gusty wind was blowing.

The City of Corsicana went to trial on a general denial. In its motion for summary judgment it set up the ordinance which prescribed conditions precedent before suit shall be maintained against the City of Corsicana, and the motion specifically set out this ordinance in detail. Owing to the fact that the trial judge held said ordinance unconstitutional under the doctrine announced in City of Terrell v. Howard, 130 Tex. 459, 111 S.W.2d 692 (Com.App., opinion adopted), which ruling is not here challenged, we will not devote further time to this part of the motion. Our Supreme Court has never receded from the doctrine there announced.

The motion then specifically set out the provisions of Art. 46d–15, which is a part of the Municipal Airport Act, as passed by the Legislature in 1947. We quote Sec. 15 thereof:

"Art. 46d–15. Public purpose, county and municipal purpose.

"The acquisition of any land or interest therein pursuant to this Act,[1] the planning, acquisition, establishment, development, construction, improvement, maintenance, equipment, operation, regulation, protection and policing of airports and air navigation facilities, including the acquisition or elimination of airport hazards, and the exercise of any other powers herein granted to municipalities and other public agencies, to be severally or jointly exercised, are hereby declared to be public and governmental functions, exercised for a public purpose, and matters of public necessity; and in the case of any county, are declared to be county functions and purposes as well as public and governmental; and in the case of any municipality other than a county, are declared to be municipal functions and purposes as well, as public and governmental. All land and other property and privileges acquired and used by or on behalf of any municipality or other public agency in the manner and for the purposes enumerated in this Act shall and are hereby declared to be acquired and used for public and governmental purposes and as a matter of public necessity, and, in the case of a county or municipality, for county or municipal purposes, respectively. Acts 1947, 50th Leg., p. 190, ch. 114, § 15."

It is our view that the cause of action pleaded by plaintiffs is ruled by the pronouncements made by our Supreme Court in Lebohm v. City of Galveston, 154 Tex. 192, 275 S.W.2d 951, 953. Our Supreme Court in the Lebohm case cites and discusses the leading cases in Texas dealing with the point here at issue, and, in the opinion we find this statement: "As the major basis for our conclusion that Section 47 of the Galveston Charter is invalid, *we consider that the necessary effect of Hanks v. City of Port Arthur [121 Tex. 202, 48 S.W.2d 944, 83 A.L.R. 278] and City of Terrell v. Howard, and as well the direct holding in City of Wichita Falls v. Limpscomb [Tex.Civ.App., 50 S.W.2d 867], is to deny to legislative bodies the right to arbitrarily abolish causes of action against municipalities where such causes of action are well established and well defined in the common law.*" As we understand the Le-

1. Arts. 46d–1 to 46d–22.

bohm case, our Supreme Court expressly holds "that charter provisions or ordinances imposing unreasonable restrictions on the right to sue a city for damages for injuries for which the liability of the city was well established at common law were violative of Art. 1, Section 13 of the Constitution [of Texas], quoted above, and therefore invalid." That is to say, a city cannot exempt itself from tort liability while it is engaged in the performance of a proprietary function as distinguished from the exercise and performance of a governmental function. (As to distinction between governmental and proprietary functions, see City of Houston v. Quinones, 142 Tex. 282, 177 S.W.2d 259. See also City of Houston v. Shilling, 150 Tex. 387, 240 S.W.2d 1010; City of Houston v. Wolverton, 154 Tex. 325, 277 S.W.2d 101).

█ Going back to the Findings of Fact, Finding No. 9 is, "The airplanes of citizens of Corsicana, as well as airplanes of persons outside Corsicana, having been hangared from time to time at the Corsicana Airport"; Finding No. 11 is, "Approximately thirty airplanes were stored at the airport at the time of the fire on October 15, 1955," and Finding No. 15 is, "The City sells gasoline and oil to persons using the Airport and charge a storage fee to persons using the airplane storage hangar." It is our view that the foregoing Findings of Fact show conclusively that the City of Corsicana, in the discharge of the foregoing functions, was acting in its proprietary capacity for the benefit primarily of its own inhabitants and other persons desiring to avail themselves of such services as distinguished from its acts in the discharge of governmental functions in the operation of the airport. It is our view that the foregoing factual situation brings this cause within the pronouncements of our Supreme Court in the Lebohm case aforesaid. Nor are we in accord with the court's Conclusion of Law No. 7, wherein he held "The burning of the grass at the Municipal Airport by the City employee on October 15, 1955 was an essential part of the operation and maintenance of the Airport itself." It is this court's view that the negligent burning of the grass, if plaintiff could so establish, could not be classified as a governmental function. On motion for rehearing in the Lebohm case, supra, our Supreme Court makes this statement: "We said that Section 13 of Article 1 of our Constitution denies 'to legislative bodies the right to arbitrarily abolish causes of action against municipalities where such causes of action are well established and well defined in the common law.' Perhaps it would have been more in keeping with the language of the constitutional provision had we said that it prohibited legislative bodies from arbitrarily withdrawing all legal remedies from one having a cause of action well established and well defined in the common law, but the practical result would have been the same, the only distinction being in unimportant phrasing. In either case proper respect must be accorded the emphasis we intended to give the word 'arbitrarily.' "

██ Appellee relies upon the doctrine announced by our Fifth Circuit Court of Appeals in the case of Imperial Production Corp. v. City of Sweetwater, 5 Cir., 210 F.2d 917, 920. In this case the Imperial Production Corporation sued the City of Sweetwater for the destruction of their airplanes by fire allegedly caused by negligence which it claimed resulted from the negligence on the part of the agents and employees of said City. In this case the City owned and operated an airport in connection with which it rented to the Corporation and to Nottingham space in a hangar for storage of their airplanes and other equipment. Such allegations and the factual situation are substantially to this effect in the case before us. The court in the Sweetwater case had occasion to consider the aforesaid statute and sustained the City's motion to dismiss on the ground that the City was exempt from liability of its negligence by virtue of having adopted the Municipal Airport Act in question. Our Fifth Circuit Court of Appeals, in a very exhaustive opinion (dated Feb. 23, 1954;

Lebohm opinion dated Jan. 1955), discusses the opinions of our Supreme Court relating to common law liability cases, together with those by the Courts of Civil Appeals, and in the opinion we find this statement: "The Act with which we are now concerned, Article 46d–15 (footnote 1, supra), was adopted in 1947, the same year in which Article 1269h was last amended. There was no need for Article 46d–15 to accomplish the purposes for which appellants contend that it was intended. Those purposes were already accomplished by Article 1269h. It is, of course, elementary that a statute should be so construed as to give it a field of operation and to make it an effective law. The legislature is never presumed to have done a vain thing in the enactment of a statute. See 50 Amer.Jur., Statutes, Sections 357, 362. In the light of the then existing law, we can see no effective meaning to be given to Article 46d–15, other than that the designation of the functions therein as being public and governmental carried with it all of the consequences which such a designation entails, including exemption of the municipality from tort liability."

■ This court has great respect for our Fifth Circuit Court and ordinarily we would follow it in this instance; but in view of the pronouncements of our Supreme Court in Lebohm v. City of Galveston, supra, we feel that we are duty bound to follow our own Supreme Court, and as we view the Lebohm decision, we think that Sec. 46d–15, insofar as it attempts to abrogate common law liability of municipalities while such municipalities and its employees are engaged in the performance of a proprietary function, violates Sec. 13 of Art. 1 of our Constitution.

Accordingly, being of this view, it is our duty to reverse the judgment of the trial court and remand this cause and give the plaintiffs an opportunity to establish, if they can, common law liability against the City of Corsicana.

Reversed and remanded.

On Motion for Rehearing

We have given much consideration to appellee's motion for rehearing, as well as the amici curiae briefs which we permitted to be filed in this cause and we are still of the opinion that the pronouncements in the Lebohm case by our Supreme Court, cited in the original opinion, should control us here.

■ In that opinion, no motion for rehearing, we find this statement: "Thus it may be seen that legislative action withdrawing common-law remedies for well established common-law causes of action for injuries to one's 'land, goods, person or reputation' is sustained only when it is reasonable in substituting other remedies, or when it is a reasonable exercise of the police power in the interest of the general welfare. Legislative action of this type is not sustained when it is arbitrary or unreasonable."

■■ In the case at bar there is no substitution of the remedy which Art. 46d–15, Vernon's Ann.Civ.St. seeks to take away from one who has suffered by reason of the negligent conduct of the city or its employees. Nor do we think that the operation of a municipal airport, insofar as taking care of its property, is necessarily an exercise of the police power in the interest of the general welfare. If it is, it seems to us that the maintenance of the city's streets would fall in the same category. Our view is that legislation that seeks to make the negligent action of the city in the maintenance and care of its grounds free of tort liability is arbitrary and unreasonable, as does Art. 46d–15 aforesaid.

Going back to the decision of the 5th Cir. Ct. of App. in Imperial Production Corp. v. City of Sweetwater, cited in the original opinion, we find this statement [210 F.2d 919]:

"In 1936 a Texas Court of Civil Appeals in Christopher v. City of El Paso, 98 S.W.2d 394, held Section 3 of the Act (Art. 1269h, R.C.S.) to be violative

of the Equal Protection Clause of the Fourteenth Amendment and the Due Process Clause of the Texas State Constitution, Vernon's Ann.St., art. 1, § 19. That holding, however, was predicated upon the operation of the airport being a proprietary function, and the Court said: '* * * we cannot agree that the Legislature in granting the power to incorporated cities in Texas to own and operate airports made the exercise of such power a governmental function.' Christopher v. City of El Paso, supra, 98 S.W.2d at page 398. The Texas Court expressly determined that the remainder of the Act was unaffected by its decision. After that decision, therefore, Article 1269h of the Revised Civil Statutes, Vernon's Ann.Civ.St. (footnote 4, supra) still furnished authority to municipalities to acquire land for airports, * * * to issue bonds and levy taxes to that end, and to do all things necessary to the accomplishment of the statutory purpose.

"The Act with which we are now concerned, Article 46d–15 (footnote 1, supra) was adopted in 1947, the same year in which Article 1269h was last amended. *There was no need for Article 46d–15 to accomplish the purposes for which appellants contend that it was intended. Those purposes were already accomplished by Article 1269h.*"

The opinion further says:

"It is clearly within the province of the legislature, when acting reasonably and not arbitrarily, to determine whether an act that may be performed by a city is public in its nature and performed as the agent of the state in furtherance of general law for the interest of the public at large and, hence, governmental. (Citing cases) * * * When the function became governmental in its nature, the legal basis was furnished for the exemption of the municipality from liability for torts, indeed, that exemption followed automatically from the nature of the func-

tion. The act was, therefore, not subject to the constitutional objections urged." (Citing cases).

We think the foregoing conclusion by our 5th Circuit Court is in irreconcilable conflict with many of the statements of our Supreme Court found in the Lebohm case. First of all, the statute here under consideration does not impose any duty upon the City of Corsicana to operate an airport. The operation of the airport as such by the City of Corsicana is of its own free will.

In the case of City of Houston v. Quinones [142 Tex. 282, 177 S.W.2d 261], cited in our original opinion, our Supreme Court pointed out that the "underlying test is whether the act performed by a city is public in its nature and performed as the agent of the State in the furtherance of the general law for the interest of the public at large, or whether it is performed primarily for the benefit of those within the corporate limits of the municipality." Our Supreme Court, in distinguishing its decision from that in the City of Ft. Worth v. George, Tex.Civ.App., 108 S.W.2d 929 (writ ref.) said: "It was held in that case (the George case) that the collection of garbage by a municipality is a governmental function, because the duty is imposed upon it by the State Legislature and it is performed by the city in furtherance of general law for the interest of the public at large."

It is our view that it cannot be contended here that the statute under consideration imposes any duty on the City of Corsicana to maintain and operate an airport, and likewise, it certainly does not impose any duty upon the City of Corsicana to cut the weeds and grass, or burn the grass on the land used by the airport. Moreover, we are of the view that the City of Corsicana, under the factual situation here, was acting in a proprietary capacity in operating and maintaining its airport, and certainly in burning the grass, and that the facts in the case here are much stronger than in the Christopher case by the El Paso

Court heretofore referred to. We also think that the determination of the question as to whether a service by a city is proprietary or governmental is a judicial function as distinguished from a legislative function. In 30B Tex.Jur. 683, we find this statement of the rule: "To be exempt, the corporation must be performing a duty imposed upon it as the agent of the State, in the exercise of a strictly governmental function." We think it is persuasive here that the section of the Texas statute under consideration is in the same language as the North Carolina statute. See Chapter 63 of the General Statutes of North Carolina, Sec. 63–50.

In Rhodes v. City of Asheville, 230 N.C. 134, 52 S.E.2d 371, 375, the Supreme Court of North Carolina had before it the consideration of the exact question here, and, in discussing the question, said:

"The interpretation we place on the language of the statute * * * leads to the view that it was the intent of the Legislature to declare that the acquisition, construction, operation and maintenance of an airport by a municipality was a governmental function in the sense that it was a public purpose. Note the language ' * * * are hereby declared to be public, governmental, and municipal functions exercised for a public purpose and matters of public necessity'.

"In the light of our own decisions and the other authorities cited herein, we are of the opinion that our General Assembly did not exempt municipalities from tort liability in connection with the ownership and operation of airports by the enactment of G.S. § 63–50, and we so hold."

See also Caroway v. City of Atlanta, 1952, 85 Ga.App. 792, 70 S.E.2d 126, 130; Miami Beach Airline Service v. Crandon, 159 Fla. 504, 32 So.2d 153, 172 A.L.R. 1425; Ex parte Houston, Okl.Cr.App., 224 P.2d 281; Granite Oil Securities v. Douglas County, 1950, 67 Nev. 388, 219 P.2d 191, 16 A.L.R.2d 1069.

Moreover, we think it is significant that the title of Art. 46d–15 is "Public purpose, county and municipal purpose." It seems to us that if the Legislature had intended actually to exempt municipalities of tort liability in the actual operation and maintenance of an airport, it would have been a very simple matter to have so provided in the caption, or to have laid down a specific rule of non-liability predicated on the public purpose. We must assume that the Legislature had knowledge of the decision of the El Paso Court in Christopher v. City of El Paso, Tex.Civ.App., 98 S.W.2d 394, which had previously held Art. 1269h unconstitutional. We are of the further view that because the caption of Article 46d–15 does not indicate that any such non-liability was intended and because no explicit rule of non-liability was laid down predicated on public purpose, we think that the Legislature did not intend to exempt municipalities from tort liability in the operation and maintenance of airports, but was merely making a declaration of the public purpose, as was done in the identical North Carolina statute.

Our Circuit Court, in the Sweetwater case cited in the original opinion, places some emphasis on the decision of the Supreme Court of Tennessee in Stocker v. City of Nashville, 174 Tenn. 483, 126 S.W.2d 339, 124 A.L.R. 345. An examination of the Tennessee statute, Williams' Code, § 2726.22, which was under consideration in the Stocker case did lay down an explicit rule of non-liability predicated on the public purpose, but declared the construction, maintenance and operation of a municipal airport to be a public governmental function and that no action or suit shall be brought or maintained against any municipality or its officers, servants or employees in or about the construction, maintenance, operation, superintendence or management of any airport.

It is certainly true that prior to the passage of Art. 46d–15, R.C.S., that the operation of a municipal airport by municipal corporations in Texas was a proprietary

function as distinguished from a governmental function, and that a municipality was subject to liability for any damage occasioned by the negligence of any of its agents or employees while in the discharge of such proprietary function. See Christoper v. City of El Paso, Tex.Civ.App., 98 S.W.2d 394 (writ dis. w.o.j.); McQuillin Municipal Corp. (3rd Ed.) 1950, Vol. 18, Sec. 5396; 6 Amer.Jur., Aviation, Sec. 27; City of Blackwell v. Lee, 1936, 178 Okl. 338, 62 P.2d 1219; Indamer Corp. v. Crandon, 5 Cir., 1952, 196 F.2d 5; Claitor v. City of Comanche, 271 S.W.2d 465 (no writ history); Housing Authority of City of Dallas v. Higginbotham, 135 Tex. 158, 143 S.W.2d 79; 30B Tex.Jur. 1213, sec. 638; Johnson v. City of Corpus Christi, Tex.Civ.App., 243 S.W.2d 273 (no writ history); Wendler v. City of Great Bend, Kan.1957, 316 P.2d 265; Peavy v. City of Miami, 1941, 146 Fla. 629, 1 So.2d 614; City of Mobile v. Lartigue, 1930, 23 Ala. 479, 127 So. 257; Brummett v. City of Jackson, 1951, 211 Misc. 116, 51 So.2d 52; Godfrey v. City of Flint, 1938, 284 Mich. 291, 279 N.W. 516; Mayor & City Council of City of Baltimore v. Crown Cork & Seal Co., 4 Cir., 1941, 122 F.2d 385; Mollencop v. City of Salem, 1932, 139 Or. 137, 8 P.2d 783, 83 A.L.R. 315; Department of Treasury v. City of Evansville, 1945, 223 Ind. 435, 60 N.E.2d 952; Patton v. Administrator of Civil Aeronautics, D.C.Alaska, 4th Div., 1953, 112 F.Supp. 817; Heitman v. City of Lake City, 1947, 225 Minn. 117, 30 N.W.2d 18; Behnke v. City of Moberly, Mo.App.1951, 243 S.W.2d 549; Granite Oil Securities v. Douglas County, 1950, 67 Nev. 388, 219 P.2d 191, 16 A.L.R.2d 1069; Caroway v. City of Atlanta, 1952, 85 Ga.App. 792, 70 S.E.2d 126; McLaughlin v. Chattanooga, 1944, 180 Tenn. 638, 177 S.W.2d 823.

Finally, it is our view that this court's original opinion does not in any manner impair the ability of a municipality to perform any of its services that are necessary to be performed in the maintenance and operation of an airport. We think the effect of the opinion is, and it was so intended to be, to prevent a city from having a license to become a tort feasor without being subject to a suit to determine its liability. Our opinion certainly does not hold that the City is liable per se for any of its actions in the operation of an airport, and we certainly did not place, and did not intend to place, any greater duty upon a municipality than it owes at common law in the operation and maintenance of a public park or playground.

Being of such views, we adhere to our former opinion and overrule appellee's original motion and amended motions for rehearing.