Argued June 18, reversed and remanded July 30, 1970

# NELSON ET UX, *Respondents, v.*
# O'CONNOR ET AL, *Appellants.*

### 473 P2d 161

*Darrell L. Cornelius*, Portland, argued the cause for appellants. On the brief were Galton & Popick, and Robertson & Wills, Portland.

No appearance for respondents.

Before SCHWAB, Chief Judge, and FORT and BRANCHFIELD, Judges.

FORT, J.

On June 15, 1967, Susan Necrum executed her last will and testament. By it she revoked one made by her on May 1, 1967. She died from a heart attack at about midnight on June 22, 1967. The plaintiff, a daughter and sole heir at law of the decedent, was named as heir in the will of May 1. She was disinherited in the will of June 15, which left a small cash bequest to the defendant O'Connor and the bulk of her estate to her nephew, the defendant Griffin.

Plaintiffs filed this suit seeking to set aside the will of June 15. The trial court concluded that the will "should be set aside as the product of the undue influence of * * * Luella O'Connor," defendant herein, and entered its decree accordingly. The defendants appeal.

We note at the outset that we are severely handicapped in our consideration of this matter by the failure of the respondents to file a brief. The record reveals that after service of the appellants' brief upon respondents, counsel simply in writing notified the court, "respondents do not intend to file a brief herein or otherwise appear."

In *Dix v. Port Orford*, 131 Or 157, 282 P 109 (1929), the Supreme Court considered an identical

situation in a case which like this one involved an appeal from a decree in an equity suit. The court said:

"In reaching our conclusion we have assumed the statement of facts by appellants to be correct. Where respondents fail to file a brief it is not incumbent upon us to search the record to ascertain the facts, although, in our discretion, we may do so if justice so demands." 131 Or at 161.

Accord, *Landers v. Safeway Stores, Inc.*, 172 Or 116, 121, 139 P2d 788 (1943).

In *Dix v. Port Orford*, supra, the court also stated:

"* * * The case is submitted solely on the brief of appellant, although it involves principles of grave importance to the public, if not the plaintiffs. In many jurisdictions the failure of respondent to file a brief is looked upon as a confession of error: 3 C.J. 1446. Under the rules of this court it is a waiver of the right to be heard: *Johnson v. White*, 60 Or. 611, (112 Pac. 1083, 119 Pac. 769)." 131 Or at 158-59.

At the time *Dix* was decided, Rule 8 of the Supreme Court stated:

"* * * A failure by appellant to comply with this rule within the time required, or such modification thereof as may be made, shall be considered a cause for affirmance or dismissal of the appeal and a failure of respondent as a waiver of the right to be heard. * * *" 123 Or at 679.

Today Rule 32 of the Supreme Court and of this court states:

"If the respondent files no brief, the cause will be deemed submitted upon its merits as to him. A respondent who has not filed a brief will not be allowed to argue the cause orally without permission of the court."

■ We find nothing in the language of the present Rule 32 to warrant a departure from *Dix* and *Landers*, heretofore quoted concerning the statement of facts. We adhere to it. Thus we have assumed the statement of facts set forth in appellants' brief as supplemented at the oral argument to be correct.

Although the trial court found this will to have been executed as the result of the "undue influence" of Luella O'Connor, it did not find that the decedent was mentally incompetent. The evidence is clear that she was competent. The will was prepared by an attorney chosen by the decedent pursuant to instructions given to him by the decedent in his own office. No one but she was present at that time. It was a simple will which left $1,000 to Mrs. O'Connor and the residue to her nephew in the state of Washington, who was totally unaware until after her death that he had been named as the principal beneficiary. No claim is made and the court did not find that he was a party to the claimed undue influence exerted by Mrs. O'Connor. There was no connection or relationship whatever between him and Mrs. O'Connor. The evidence was clear that for several years he and his wife had been closer to the decedent than had anyone else and that she had visited in their home many times and been befriended by them on many occasions. Mrs. O'Connor, whose bequest represented less than ten per cent of the whole estate, was a neighbor who had known the decedent for something over a year, had shopped with her on many occasions and often visited back and forth in both their homes.

The decedent had suffered from a cardiac condition for several years. On April 29 she had a severe heart attack. While in the intensive care unit, her

daughter had prepared and her mother executed her first will leaving everything to the daughter. She also had guardianship papers prepared for her mother as an incompetent, naming the daughter's husband as guardian. The decedent, due to her serious physical condition, in fact was not aware that she had executed a will at all. When she learned during her recovery the nature of the documents she had signed while in the intensive care unit, she was very upset. Upon her release from the hospital on June 4, she contacted Mrs. O'Connor, who had not visited her at the hospital and was until then unaware of the will executed there. Mrs. Necrum, who was still under her doctor's close supervision at home, asked Mrs. O'Connor to contact a lawyer whom she desired to employ, told her his name and that he was counsel for the decedent's labor union. Mrs. O'Connor contacted the attorney for an appointment. He asked to have copies of the earlier will and guardianship papers. At Mrs. Necrum's direction Mrs. O'Connor picked these up from the attorney who had drawn them and delivered them to the attorney Mrs. Necrum had selected.

A day or two later Mrs. O'Connor took Mrs. Necrum to that attorney's office for her appointment with him and left her there. Mrs. Necrum told him what she wanted done. After consultation, the new will was drawn while she was there. It is a simple one-page document. In addition, she directed her attorney to contact the lawyer who had drawn the earlier will and guardianship papers to begin the steps necessary to have the guardianship closed forthwith.

The will was executed in the office of the decedent's attorney. Two other lawyers, associates of the man who drew the will, served as witnesses with him

to its regular execution. Shortly before it was signed Mrs. O'Connor returned to the office to pick up Mrs. Necrum and accompany her back to her home. She was present, therefore, when the will was executed, but took no part whatever in it. A week later Mrs. Necrum suffered another heart attack at her own home and died there, at the age of 66.

The record also revealed a long history of sharp discord between the mother and her daughter. While this history reflected no credit upon the decedent, who appeared initially responsible for it through her abandonment of the girl while the daughter was still a teen-ager many years earlier, there were far from the normal ties between them. Indeed, Mrs. Necrum's own doctor had had to advise the daughter to stay away from her mother because of the serious adverse effect it had both upon the mother's condition and upon the daughter's own health as well.

■ The burden to prove undue influence is upon the contestant. *In re Estate of Verd Hill*, 198 Or 307, 334, 256 P2d 735 (1953); *In re Reddaway's Estate*, 214 Or 410, 420, 329 P2d 886 (1958). The latter case discusses at length the factors which should be considered in determining the exercise and existence of undue influence, pointing out that

"* * * undue influence has a closer kinship to fraud than to duress." 214 Or at 420.

The Supreme Court in *In re Darst's Will*, 34 Or 58, 54 P 947 (1898), stated:

"Influence arising from gratitude, affection, or esteem is not undue, nor can it become such unless it destroys the free agency of the testator at the time the instrument is executed, and shows that the disposition which he attempted to make of his property therein results from the fraud, imposition, and

restraint of the person whose superior will prompts the execution of the testament in the particular manner which the testator adopts * * *." 34 Or at 65.

This rule was cited with approval in *In re Estate of Verd Hill*, supra, 198 Or at 334-35.

The court in *In re Reddaway's Estate*, supra, pointed out:

> "A person may make a legally effective disposition of his estate which reasonable men would regard as unfair. He may favor his mistress over his wife, or he may disinherit a deserving son, and the law will not concern itself with his moral duty. *In re Estate of Riggs*, 120 Or 38, 241 P 70, 250 P 753 (1926). * * *" 214 Or at 424.

■ We have reviewed the facts in the light of the tests set forth in *In re Reddaway's Estate*, supra, in accordance with our duty to consider the matter de novo. We are of the opinion that the contestants have failed to show that Mrs. O'Connor exerted undue influence upon Mrs. Necrum, or even that there was a confidential or fiduciary relationship between them. As the Supreme Court said in *In re Estate of Andersen*, 192 Or 441, 235 P2d 869 (1951):

> "* * * [T]he mere kindly attentions of a close friend are not undue influence." 192 Or at 460.

Accordingly it follows that the decree must be reversed and the cause remanded with instructions to admit the will of June 15 to probate.